# EXHIBIT "A"

E-FILED IN OFFICE - CB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-03772-S2**

**6/2/2023 12:02 PM**

**TIANA P. GARNER, CLERK**

IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| DONNA AUSBORN, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | CIVIL ACTION |
| | * | FILE NO. |
| ILLINOIS UNION INSURANCE | * | 23-C-03772-S2 |
| COMPANY, d/b/a CHUBB®, | * | |
| | * | |
| Defendant. | * | |

## **COMPLAINT FOR DAMAGES**

COMES NOW Plaintiff Donna Ausborn and hereby files this Complaint for

damages against Defendant, showing the Court as follows:

### **INTRODUCTION**

1.

This is a direct action against a liability insurance carrier to collect a

Plaintiff's judgment against Defendant's insureds to the extent of the policy limits.

### **PARTIES AND JURISDICTION**

2.

Plaintiff Donna Ausborn is a citizen of the state of Georgia who resides in

Dawson County.

3.

Defendant Illinois Union Insurance Company is a foreign corporation which

1

has its principal place of business at 525 West Monroe Street, Suite 400, Chicago, Illinois 60661 and transacts business in Georgia as a member of the Chubb® insurance group. Upon information and belief, Defendant is a subsidiary of Chubb & Son, Inc., which has its principal place of business at 436 Walnut Street, Philadelphia, Pennsylvania 19106. Said Defendant is subject to the jurisdiction of this Court because its Georgia registered agent is located in Gwinnett County and may be served by request for waiver of summons and service mailed to CT Corporation System, 289 S Culver St, Lawrenceville, Georgia 30046-4805, as well as to the registered agent designated by its insurance policy, which is Paul Bech, Associate General Counsel, Chubb, 436 Walnut Street, Philadelphia, Pennsylvania 19106.

4.

Defendant has the option of removing this case to federal court because the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties.

**FACTS**

5.

On March 10, 2023, Plaintiff obtained a $7 million judgment in the State Court of Fulton County, Case No. 22EV005489, for wrongful death against three

employees of the City of East Point who were insureds under a liability insurance policy sold by Defendant to the City of East Point for a premium in excess of $1.5 million per year to cover liabilities such as the underlying judgment. (See copies of judgment attached as Exhibit A and insurance policy attached as Exhibit B).

6.

The judgment was not appealed, and on May 1, 2023, Plaintiff served a 30-day demand for payment of the judgment upon Defendant and its insureds.

7.

Defendant has failed to pay the amount of the judgment to the extent of the limits of coverage under its liability insurance policy within the time limit of the demand, despite having been placed on lawful notice of the claim and having no viable coverage defenses under Georgia law.  *See, e.g., Stonewall Ins. Co. v. Farone*, 129 Ga. App. 471, 474, 199 S.E.2d 852 (1973) ("it makes no difference who gives the notice, so long as a reasonable and timely notice is given the company and it has actual knowledge of the pendency of a claim or suit").

**LIABILITY**

8.

Because Defendant has failed to satisfy the judgment against its insured despite being contractually obligated to do so, Plaintiff is authorized by Georgia

law to file a direct action against Defendant to collect the judgment to the extent of

Defendant's policy limits:

> Where a judgment has been obtained against the insured which fixes
> the liability of the insured, an action may be maintained directly
> against the insurer for the proceeds of the policy. *See Arnold v.
> Walton*, 205 Ga. 606, 613 (54 SE2d 424) (1949); *Fisher v. American
> Cas. Co*., 67 Ga. App. 784 (2) (21 SE2d 306), *rev'd on other grounds*,
> 195 Ga. 136 (23 SE2d 395) (1942); *Hodges v. Ocean Accident &c.
> Corp., 66 Ga. App. 431 (1) (18 SE2d 28) (1941). See also Public Nat.
> Ins. Co. v. Wheat*, 100 Ga. App. 695 (1) (112 SE2d 194) (1959),
> wherein the general principle against direct action is set out, but the
> court affirmed a verdict in an action directly against the insurer where
> the plaintiff below had previously received a judgment against the
> insured.

*Smith v. GEICO*, 179 Ga. App. 654, 655, 347 S.E. 2d 245 (1986).

9.

Because Defendant's insurance policy for the City of East Point provides $7

million in coverage applicable to the claims asserted by Plaintiff in the Fulton State

Court lawsuit, Plaintiff is entitled to recover the sum of $7 million from Defendant

as satisfaction of the judgment, along with costs and accrued interest to the extent

allowed by Georgia law.

10.

In addition to the amount of the judgment itself, Plaintiff is also entitled to

recover attorney's fees and costs of litigation under O.C.G.A. §13-6-11 from

Defendant for its own stubborn litigiousness in putting Plaintiff to unnecessary time and expense to collect the aforementioned debt.

WHEREFORE, Plaintiff demands the following:

a)      That this action be tried by a jury on all issues triable by jury;

b)      That judgment be entered in favor of Plaintiff for the amount of $7,000,000.00 in compensatory damages, plus interest;

c)      That all costs of this action be taxed against Defendant; and

d)      That Plaintiff be awarded her attorney's fees and expenses of litigation.

Respectfully submitted this 2nd day of June, 2023.


*/s/ Craig T. Jones*
Craig T. Jones
Ga. Bar No. 399476

**CRAIG T. JONES, P.C.**
Post Office Box 129
Washington, Georgia 30673
(678) 643-0062
craigthomasjones@outlook.com

5

# EXHIBIT A

State Court of Fulton County
**E-FILED**
22EV005489
3/10/2023 12:17 PM
Donald Talley, Clerk
Civil Division

## IN THE STATE COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| DONNA AUSBORN, Surviving Daughter of Kenneth Michael Ausborn and Putative Personal Representative of the Estate of Kenneth Michael Ausborn, Deceased, | * * * * * | |
| Plaintiff, | * | CIVIL ACTION FILE NO. |
| v. | * | 22EV005489 |
| | * | |
| OFFICER MADISON G. BURRELL, OFFICER MATTHEW CRUZ , and OFFICER PAMELA BRAYNEN, | * * * | |
| | * | |
| Defendants. | * | |

## **DEFAULT JUDGMENT**

Plaintiff Donna Ausborn having filed a Motion for Default Judgment and Certificate of Default, the Court having reviewed said filings and the docket and having concluded that the Defendants are in default, this matter having come before the Court for a bench trial on damages on March 9, 2023, and the Court having heard and considered Plaintiff's evidence on the amount of damages, it is hereby

ORDERED that Plaintiff Donna Ausborn is entitled to recover wrongful death damages for the full value of the life of Kenneth Michael Ausborn in the amount of SEVEN MILLION DOLLARS ($7,000,000.00) and hereby enters Judgment against Defendants Madison G. Burrell, Pamela Braynen, and Matthew Cruz for said amount, plus court costs to be assessed by the Clerk.

SO ORDERED this <u>10th</u> day of March, 2023.

HON. JAY M. ROTH
State Court of Fulton County

Prepared by:

Craig T. Jones
Counsel for Plaintiff
Georgia Bar No. 399476
CRAIG T. JONES, P.C.
Post Office Box 129
Washington, Georgia 30673
(678) 643-0062
craigthomasjones@outlook.com

2

# EXHIBIT B



# *Illinois Union*
INSURANCE COMPANY

525 West Monroe Street, Suite 400
Chicago, IL  60661

# NOTICE

**POLICY NO.**   PEP G71527098 002

**NAME OF INSURED:**  City of East Point, GA

**ADDRESS:**  2777 East Point Street
East Point, Georgia 30344

We are pleased to enclose your policy for this account.

Please be advised that by binding this risk with the above referenced Surplus Lines Insurance Company, you agree that as the Surplus Lines Broker responsible for the placement of this insurance policy, it is your obligation to comply with all States Surplus Lines Laws including completion of any declarations/affidavits that must be filed as well as payment of any and all Surplus Lines taxes that must be remitted to the State(s). We will look to you for indemnification if controlling Surplus Lines Laws are violated by you as the Surplus Lines broker responsible for the placement.

You further confirm that any applicable state requirement concerning a diligent search for coverage by admitted carriers has been fulfilled in accordance with state law.

Thank you for this placement and your regulatory compliance.

Date:  06/19/2020

WSG-084 (05/11)

HANNAH - 000264



**Illinois Union Insurance Company**
525 W. Monroe Street
Chicago, IL 60661

# Chubb Advantage℠
# Public Entity
# Retained Limits Policy
# Declarations

### This Policy is issued by the stock insurance company shown above.

**SOME COVERAGE PARTS IN THIS POLICY PROVIDE COVERAGE ON A CLAIMS MADE AND REPORTED BASIS. IF COVERAGE IS PROVIDED ON A CLAIMS MADE AND REPORTED BASIS, IT IS SUBJECT TO THE TERMS AND CONDITIONS OF THAT COVERAGE PART. PLEASE READ IT CAREFULLY.**

**THE LIMITS OF INSURANCE AVAILABLE TO PAY INSURED DAMAGES SHALL BE REDUCED BY AMOUNTS INCURRED FOR CLAIMS EXPENSES. FURTHER NOTE THAT AMOUNTS INCURRED FOR DAMAGES AND CLAIMS EXPENSES SHALL ALSO BE APPLIED AGAINST THE RETAINED LIMIT AMOUNTS.**

| **Policy No**. PEP G71527098 002 | **Renewal Of:** PEP G71527098 001 |
|---|---|
| Item 1. **Named Insured and Principal Address**<br>City of East Point, GA<br>2777 East Point Street<br>East Point, Georgia 30344 | **Producer Name and Address**<br>JP West, Inc.<br>90 Broad Street, 3rd Floor<br>New York, NY 10004 |

Item 2. **Policy Period**:

    From: June 19, 2020 12:01 a.m. To June 19, 2021 12:01 a.m. (Local time at the address shown in Item 1)

Item 3. **Coverage(s) Purchased** (☒):

A.  ☒  General Liability Coverage Part

B.  ☒  Automobile Liability Coverage Part

C.  ☒  Public Officials & Employment Practices Liability Coverage Part

D.  ☐  Miscellaneous Professional Liability Coverage Part

E.  ☐

F.  ☒  Limited Automobile Physical Damage Coverage Part

TOTAL PREMIUM     $ 1,598,622

**"This contract is registered and delivered as a surplus line coverage under the Surplus Line Insurance Law, O.C.G.A. Chapter 33-5."**

**J.P. West Inc./Eileen Frank - Surplus Lines Broker**

©Chubb. 2016. All rights reserved.

HANNAH - 000265

| Item 4. **Retained Limit**: | | |
|---|---|---|
| A. General Liability Coverage Part | Each **Occurrence** | $ 150,000 |
| B. Automobile Liability Coverage Part | Each **Accident** | $ 150,000 |
| C. Public Officials & Employment Practices Liability Coverage Part | Each **Claim** | $ 150,000 |
| D. Miscellaneous Professional Liability Coverage Part | Each **Claim** | Not Covered |

The applicable Retained Limit is shown in the individual Coverage Part if not listed above.

| Item 5. **Limits of Insurance**: | | |
|---|---|---|
| A. General Liability Coverage Part | Each **Occurrence** | $ 7,000,000 |
| General Liability Coverage Part Aggregate | Aggregate | $ 10,000,000 |
| B. Automobile Liability Coverage Part | Each **Accident** | $ 5,000,000 |
| C. Public Officials & Employment Practices Liability Coverage Part | Each **Claim** | $ 7,000,000 |
| Public Officials & Employment Practices Liability Coverage Part | Aggregate | $ 10,000,000 |
| D. Miscellaneous Professional Liability Coverage Part | Each **Claim** | Not Covered |
| Miscellaneous Professional Liability Coverage Part | Aggregate | Not Covered |

The applicable Limits of Insurance are shown in the individual Coverage Part if not listed above.

Item 6. **Retroactive Date**: (Enter Date or enter "None" if no Retroactive Date Applies)

A.   Public Officials & Employment Practices Liability Coverage Part          10/01/2013

B.   Miscellaneous Professional Liability Coverage Part          None

The applicable Retroactive Date is shown in the individual Coverage Part if not listed above.

Item 7. **Optional Extended Reporting Period**:

A.   Public Officials & Employment Practices Liability Coverage Part
         Additional Premium:   100**%** of Annual Premium
         Additional Period:   12 Months

B.   Miscellaneous Professional Liability Coverage Part
         Additional Premium:   Not Covered**%** of Annual Premium
         Additional Period:   Not Covered

Terms of the applicable Optional Extended Reporting Period are shown in the individual Coverage Part if not listed above.

HANNAH - 000266

# SCHEDULE OF FORMS AND ENDORSEMENTS

| Named Insured<br>City of East Point, GA | | | Endorsement Number<br>Page 1 of 1 |
|---|---|---|---|
| Policy Symbol<br>PEP | Policy Number<br>G71527098 002 | Policy Period<br>June 19, 2020 to June 19, 2021 | Effective Date of Endorsement<br>June 19, 2020 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## SCHEDULE OF FORMS

| Policy Forms | Title |
|---|---|
| PE-19610i (02/12) | Common Conditions, Definitions and Exclusions |
| PE-19609d (07/11) | General Liability Coverage Part |
| PE-19608a (06/06) | Automobile Liability Coverage Part |
| PE-19607f (09/11) | Public Officials & Employment Practices Liability Coverage Part |
| PE-20694 (08/06) | Limited Auto Physical Damage Coverage Part |

## SCHEDULE OF ENDORSEMENTS

| Endorsement Number | Form Number | Title |
|---|---|---|
| 1 | PE-33335 (03/11) | Dam, Reservoir, Levee Coverage Endorsement (Sublimited) |
| 2 | PE-44768 (06/16) | Exclusion- Head Trauma Injury |
| 3 | MS-282140 (07/19) | Law Enforcement Activities Limits |
| 4 | PE-53414 (04/20) | Exclusion – Virus, Bacteria or Microorganism That Induce Physical Distress, Illness or Disease |
| 5 | MS-298170.2 (04/20) | Retained Limit Amended For Specified Events |
| 6 | MS-298170.3 (04/20) | Retained Limit Amended For Specified Events |
| 7 | LD-2S58c (02/01) | Georgia Changes – Cancellation and Nonrenewal |
| 8 | PE-23778b (01/15) | Cap on Losses from Certified Acts of Terrorism |
| 9 | ALL 21101 (11/06) | Trade or Economic Sanctions Endorsement |
| 10 | XS-3U96g (01/16) | Service of Suit Endorsement |
| 11 | LD-5S23j (03/14) | Signatures |
| | TR-45231 (01/15) | Policyholder Disclosure-Notice of Terrorism Insurance Coverage |
| | SL-17891 (08/04) | Georgia Surplus Lines Notification |
| | ALL-20887 (10/06) | Chubb Producer Compensation Practices & Policies |
| | ILP 001 01 04 | U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") Advisory Notice to Policyholders |

HANNAH - 000267



**Chubb Advantage**ˢᴹ
**Public Entity**
**Retained Limits Policy**

## COMMON CONDITIONS, DEFINITIONS AND EXCLUSIONS

Throughout this **Policy** the words **You** and **Your** refer to the **Named Insured**. The words **We**, **Us**, and **Our** refer to the company providing this insurance.

Certain words and phrases that appear in bold print have special meanings found either in the Common Conditions, Definitions and Exclusions section of the **Policy**, or in the Definitions sections of the Coverage Parts.

A.  Policy Conditions

All Coverage Parts included in this **Policy** are subject to the following conditions except as otherwise expressly indicated.

1.  Alteration, Assignment and Headings

a.  Notice to any agent or knowledge possessed by any agent or by any other person shall not affect a waiver or a change in any part of this **Policy** nor prevent the **Insurer** from asserting any right under the terms of this **Policy**.

b.  No change in, modification of, or assignment of interest under this **Policy** shall be effective except when made by a written endorsement to the **Policy** signed by an authorized representative of the **Insurer**.

c.  The titles and headings to the various parts, sections, subsections and endorsements of the **Policy** are included solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions of such parts, sections, subsections or endorsements.

2.  Alternative Dispute Resolution

The **Insured** and the **Insurer** shall submit any dispute or controversy arising out of or relating to this **Policy** or the breach, termination or invalidity thereof, including disputes as to the scope or applicability of coverage, to the alternative dispute resolution ("ADR") process set forth in this section.

Either an **Insured** or the **Insurer** may elect the type of ADR process discussed below; provided, however, that the **Insured** shall have the right to reject the choice by the **Insurer** of the type of ADR process at any time prior to its commencement, in which case the choice by the **Insured** of ADR process shall control.

There shall be two choices of ADR process: (1) non-binding mediation administered by any mediation facility to which the **Insurer** and the **Insured** mutually agree, in which the **Insured** and the **Insurer** shall try in good faith to settle the dispute by mediation in accordance with the then-prevailing commercial mediation rules of the mediation facility; or (2) arbitration submitted to any arbitration facility to which the **Insured** and the **Insurer** mutually agree, in which the arbitration panel shall consist of three disinterested individuals. In either mediation or arbitration, the mediator or arbitrators shall have expertise in the legal, or the insurance issues relevant to the matters in dispute. In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties. No award of the arbitrators shall include attorneys' fees or other costs. In the event of mediation, either party shall have the right to commence arbitration in accordance with this section; provided, however, that no such arbitration shall be commenced until at least 60 days after the date the mediation is concluded or terminated. In all events, each party shall bear its own expenses in the ADR process.

Either ADR process may be commenced in New York, New York or in the state indicated in Item 1 of the Declarations as the principal address of the **Named Insured**. The **Named Insured** shall act on behalf of each and every **Insured** in connection with any ADR process under this section.

 ©Chubb. 2016. All rights reserved.

HANNAH - 000268

3. Appeals

**We** can appeal a judgment against an **Insured** under this agreement if:

a. The judgment is for more than the amount of the **Retained Limit**, and

b. An **Insured** does not appeal it.

If **We** appeal a judgment, **We** will pay the costs of the appeal and any interest on those costs. Those payments will be in addition to any Limit of Insurance of this **Policy**.

4. Audit of Books and Records

**We** may audit **Your** books and records at any time during the **Policy Period** or within five years after the **Policy Period**. There is no time limit on auditing **Your** books and records with respect to **Claims** under this **Policy**.

5. Authorization Clause

By the acceptance of this **Policy**, the **Named Insured** agrees to act on behalf of all **Insureds** with respect to the giving and receiving of notice of **Claim**, the giving or receiving of notice of cancellation or non renewal, the payment of premiums and the receiving of any premiums that may become due under this **Policy**, the agreement to and acceptance of endorsements, consenting to any settlement, exercising the right to the **Extended Reporting Period**, and the giving or receiving of any other notice provided for in this **Policy**, and all **Insureds** agree that the **Named Insured** shall so act on their behalf.

6. Conflicting State Law or Regulation

In the event that provisions of this **Policy** conflict with any state law or regulation, then such law or regulation shall prevail and this **Policy** is amended to conform with such law or regulation.

7. Defense and Settlement

a. **We** have no duty to defend a **Claim** against an **Insured** seeking **Damages**.

b. **We** shall have no obligation to pay or indemnify an **Insured** for any amount if an **Insured**'s obligation to pay **Damages** and **Claim Expenses** is within or equal to the **Retained Limit**.

c. **You** have the duty to defend any **Claim** to which this insurance applies and shall be responsible for the **Damages** and **Claim Expenses** up to the **Retained Limit**.

d. When the **Damages** and **Claim Expenses** for which **You** become legally obligated to pay exceed the **Retained Limit**, **You** will be entitled to indemnification by **Us**. **You** shall submit any request for indemnification to **Us** as soon as practicable after the **Damages** and **Claim Expenses** exceed the **Retained Limit**. **We** will promptly indemnify **You** in excess of the **Retained Limit** subject to the Limit of Insurance for the applicable Coverage Part as shown on the Declarations. The **Retained Limit** must be satisfied by actual payment by **You**. The **Retained Limit** may not be satisfied by payment by the **Insured** of any deductible of any other **Policy** or payments made on behalf of the **Insured** by any other insurer, person or entity. The **Insured** must make actual payment of the **Retained Limit** under this **Policy** without regard to whether the **Insured** must pay other amounts under any other **Policy**, even if the claimed amounts are deemed to have been caused by one **Occurrence, Accident** or **Wrongful Act**. The **Retained Limit** shall not be impaired by any **Claim** brought against an **Insured** which is not covered under the applicable Coverage Part.

e. **Your** legal obligation to pay the **Damages and Claim Expenses** must be evidenced either by a judgment against any **Insured** after final adjudication, or by an arbitration award entered as a judgment, or by a written settlement executed by **You** and the settling claimants.

f. **You** must obtain **Our** prior written approval before offering or agreeing to pay an amount which is in excess of the **Retained Limit** in order to settle any **Claim**.

g. **We** shall have the right and **You** shall avail **Us** of the opportunity to associate with **You** in the defense of any **Claim** that in **Our** sole opinion may create indemnification obligations for **Us**.

HANNAH - 000269

h. **We** shall have the right to settle any **Claim** that in **Our** sole opinion may create indemnification obligations for **Us**.

8. Duties In the Event of **Accident**, **Occurrence**, **Wrongful Act**, or **Claim**

a. **You** must see to it that:

i. **We** are notified in writing as soon as practicable once **You** have knowledge of any **Accident** or **Occurrence** which may reasonably and subsequently give rise to a **Claim** being made against an **Insured** that is likely to result in liability for **Us** under this **Policy**. Notice shall be deemed given as soon as practicable if it is given to **Us** by the department or person to whom **You** have delegated such claims reporting responsibility as soon as practicable after they have knowledge of such **Accident** or **Occurrence**. Further, for any **Claim** arising from a **Wrongful Act**, notification to **Us** may be given no later than sixty (60) days after the end of the **Policy Period**.

ii. **You** immediately make a written record of specific information about any **Claim** which appears reasonably likely to involve indemnification under this **Policy**, including but not limited to:

1. The identity of any potential claimants;

2. A description of any anticipated **Wrongful Act** allegations;

3. The identity of the **Insured** allegedly involved;

4. The circumstances by which the **Insured** first became aware of the **Accident**, **Occurrence** or alleged **Wrongful Act**;

5. The consequences which have resulted or may result;

6. The nature of the potential monetary damages; and

7. The date the **Claim** was received;

iii. **You** notify **Us** in writing as soon as practicable and provide **Us** with all the information required under section ii above. Notice shall be deemed given as soon as practicable if it is given to **Us** by the department or person to whom **You** have delegated such responsibility as soon as practicable after they have knowledge of such **Claim**;

iv. Notice will be made to:

| | |
|---|---|
| **MAIL** | Chubb North American Claims<br>P.O. Box 5122<br>Scranton, PA  18505-0554 |
| **EMAIL** | ACEClaimsFirstNotice@chubb.com |
| **FAX** | (877) 395-0131 (Toll Free)<br>(302) 476-7254 (Local) |
| **PHONE** | (800) 433-0385 – Business Hours<br>(800) 523-9254 – After Hours |

v. **We** receive any assistance **We** reasonably request in the enforcement of any right against any person or organization which may be liable;

vi. **We** receive **Your** full cooperation as stated in this **Policy**; and

vii. **We** receive **Your** full cooperation in the investigation, settlement or defense of any **Claim**.

b. **You** must notify **Us** and provide information in the manner specified above of any **Accident**, **Occurrence**, **Wrongful Act** or **Claim**, regardless of the coverage or liability, which:

i. Results in the establishment of a reserve, or would reasonably require the establishment of a reserve, for **Damages** which equals or exceeds 50% of the **Retained Limit**; or

©Chubb. 2016. All rights reserved.

HANNAH - 000270

    ii. Involves a notice of **Claim** for a **Wrongful Act** which is reasonably likely to equal or exceed 25% of the **Retained Limit**; or

    iii. Involves any of the following:

        1. Any injury to the spinal cord or vertebrate, including paraplegia, quadriplegia and partial paralysis;

        2. Any serious head injury including skull fracture;

        3. A brain or brain stem injury;

        4. Any burn to 25% or more of the body;

        5. A fatality;

        6. Any amputation or loss of use of a major extremity or multiple minor extremities;

        7. Sensory Loss (such as sight, hearing, smell, touch or taste);

        8. Multiple Fractures or serious disfigurement or scarring;

        9. **Bodily injury** resulting from use of a weapon or restraining device by law enforcement which results in the establishment of a reserve, or would reasonably require the establishment of a reserve, for **Damages** which equal or exceed 25% of the **Retained Limit**; or

        10. Any **Suit** filed as a class action, whether any such class action or class is certified; or

    iv. Is an actual or anticipated **Crisis Event** as soon as practicable, but in no event later than thirty (30) days after **You** first incur **Crisis Management Expenses** for which coverage will be requested under this **Policy**.

Knowledge of an **Accident**, **Occurrence**, **Wrongful Act**, or **Claim** by an agent or **Employee** of any **Insured** shall not in itself constitute **Your** knowledge unless any of the persons with such knowledge is an executive officer or director; or other persons in a supervisory or managerial capacity, or acting as a risk manager or insurance manager; or a person to whom **You** have delegated such responsibility, have such knowledge.

  c. If, during the **Policy Period**, **You** have knowledge of any **Wrongful Act** which may reasonably give rise to a future **Claim** covered under this **Policy**, and if **You** give written notice to **Us** during the **Policy Period** or any applicable **Extended Reporting Period** of the details of such **Wrongful Act** referenced in 1 - 6 of section 8.b.ii above, then any **Claim** which arises out of such **Wrongful Act** shall be deemed to have been first made at the time such written notice was received by **Us**. No coverage is provided for fees, expenses and other costs incurred prior to the time such **Wrongful Act** results in a **Claim**.

9. Estates, Legal Representatives and Spouses

The estates, heirs, legal representatives, assigns, spouses and legally recognized domestic partners of an **Insured** and any natural person qualifying as a domestic partner of an **Insured** under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the **Named Insured** shall be considered an **Insured** under this **Policy**; but coverage is afforded to such estates, heirs, legal representatives, assigns, spouses and legally recognized domestic partners only for a **Claim** arising solely out of their status as such and, in the case of a spouse or legally recognized domestic partner, where the **Claim** seeks **Damages** from marital community property, jointly held property or property transferred from a natural person **Insured** to the spouse or legally recognized domestic partner. No coverage is provided for any act of an estate, heir, legal representative, assign, spouse or legally recognized domestic partner. All of the terms and conditions of this **Policy** including, without limitation, the **Retained Limit** applicable to **Damages** and **Claim Expenses** claimed against an **Insured** shown in Item 4 of the Declarations, shall also apply to such estates, heirs, legal representatives, assigns, spouses and legally recognized domestic partners.

©Chubb. 2016. All rights reserved.

HANNAH - 000271

10. Rights of Third Parties/Financial Impairment

   a. Other than (a) provided to **You** in Condition A.2. above (Alternative Dispute Resolution) or (b) expressly provided for by law, this **Policy** grants no rights whatsoever to any person or organization to sue **Us** or join **Us** as a party to any action against any **Insured** to determine the  liability of any **Insured** nor shall **We** be impleaded by any **Insured** or its legal representatives. Bankruptcy or insolvency of any **Insured** or of the estate of any **Insured** (or any insurer providing underlying insurance or an **Insured**'s inability to pay any part of the **Retained Limit**) shall not relieve **Us** of **Our** obligations nor deprive **Us** of any rights or defenses under this **Policy**.

   b. In the event there is a reduced recovery or no recovery available to an **Insured** as a result of such financial impairment of any **Insurer** providing other insurance, the coverage under this **Policy** shall apply only in excess of the **Retained Limit**. Under no circumstances shall **We** be required to drop down and replace any underlying Limit of Insurance, or assume any other obligations of any financially impaired **Insurer** or an **Insured**.

11. Inspection

   **We** have the right, but are not obligated to inspect any **Insured**'s premises and operations at any time. **Our** inspections are not safety inspections. They relate only to the insurability of the premises and operations and the premium to be charged. **We** may give **You** reports on the conditions **We** find. **We** may also recommend changes to make the premises or operation a better insurance risk. While they may help reduce losses, **We** do not undertake the duty of any person or organization to provide for or advise on the health or safety of workers, third parties or the public. **We** do not warrant or represent that the premises or operations are safe or healthful, or that they comply with laws, regulations, codes or standards.

12. Interpretation

   The terms and conditions of this **Policy** shall be interpreted and construed as a commercial contract in an evenhanded fashion as between the parties. If the language of this **Policy** is to be interpreted in any suit, arbitration, mediation or appeal, any dispute regarding such interpretation shall be resolved in the manner most consistent with the relevant terms and conditions, without regard to authorship of the language, without any presumption or arbitrary interpretation or construction in favor of either the **Insured** or the **Insurer** and without reference to the reasonable expectations of either the **Insured** or the **Insurer**.

13. Other Insurance

   If insurance with any other **Insurer** is available to cover a **Claim** for an **Insured** for any coverage under this **Policy** whether on a primary, excess, or contingent basis, the insurance under this **Policy** is excess of and does not contribute with such other insurance.

   It is also agreed that such other insurance is excess over the **Retained Limit** and we will not make any payments until the other insurance and the **Retained Limit** have been exhausted.

   The insurance under this **Policy** is not subject to the terms, conditions, or limitations of any other insurance.

   This condition does not apply with respect to excess insurance purchased specifically to be in excess of this **Policy**.

14. Premium

   a. The **Named Insured** shown in the Declarations:

      i. Is responsible for the payment of all premiums; and

      ii. Will be the payee for any return premiums **We** pay.

   b. **We** will compute all premiums for this **Policy** in accordance with **Our** rules and rates.

   c. The **Named Insured** must keep records of the information needed for premium computation, and send copies at such times as **We** may request.

©Chubb. 2016. All rights reserved.
HANNAH - 000272

15. Representations

   a. The **Insured** represents and acknowledges that the statements and information contained in the **Application** are true and accurate and:

      i. are the basis of this **Policy** and are to be considered as incorporated into and constituting a part of this **Policy**; and

      ii. shall be deemed material to the acceptance of this risk or the hazard assumed by the **Insurer** under this **Policy**; and

   b. It is understood and agreed that:

      i. this **Policy** is issued in reliance upon the truth and accuracy of such representations;

      ii. if such representations or such information are not true, accurate and complete, this **Policy** shall be null and void in its entirety and the **Insurer** shall have no liability hereunder;

   c. Any **Insured's** failure to disclose all hazards as of the inception date of this **Policy** shall not prejudice the **Insured** with respect to the coverage afforded by this **Policy**; provided such failure or omission is not intentional and any **Insured** did not know about such hazard prior to the commencement of the **Policy Period**.

16. Right to Recover Payment

Any persons or organizations for whom **We** make a payment under this insurance must transfer to **Us** their right of recovery against any other party. After a **Claim** they must do everything necessary to secure, and nothing to impair, these rights. However, **We** will waive **Our** right of recovery against any person or organization with respect to which the **Insured** has waived its right of recovery prior to the **Occurrence**, **Accident**, or **Wrongful Act** in an **Insured Contract**.

17. Territory

Coverage under this **Policy** shall extend to **Accidents**, **Occurrences** or **Wrongful Acts** taking place or sustained anywhere in the world, provided the **Claim** is made within the jurisdiction of and subject to the laws of the United States of America, Canada or their respective territories or possessions.

18. Termination of the **Policy**

   a. The **Named Insured** may cancel this **Policy** at any time by sending **Us** a written request or by returning the **Policy** stating the date of cancellation.

   b. **We** may cancel this **Policy** at any time by mailing to the **Named Insured** a notice of cancellation 60 days (10 days in the event of non-payment of premium) in advance of the cancellation date. **Our** notice of cancellation will be mailed to the **Named Insured's** last known address, and will indicate the date on which coverage is terminated.

   c. If cancellation is requested by the **Named Insured**, return premium will be computed at 90% of the pro rata premium.

If **We** cancel, return premium will be computed pro rata.  If this **Policy** insures more than one **Named Insured**, cancellation may be effected by the **Named Insured** as shown on the Declarations Page for the account of all the **Named Insureds**. Notice of cancellation by **Us** to the **Named Insured** will be deemed notice to all **Insureds** and payment of any return premium to such **Named Insured** will be for the account of all interests.

   d. This **Policy** shall also terminate at the earliest of the following times:

      i. Upon expiration of the **Policy Period** as set forth in Item 2 of the Declarations; or

      ii. At such other time as may be agreed upon by the **Insurer** and the **Named Insured**.

   e. Either party may elect to non-renew the **Policy** at its expiration date for any reason.

©Chubb. 2016. All rights reserved.

HANNAH - 000273

19. Transfer of Rights and Duties

**Your** rights and duties under this insurance may not be transferred without **Our** written consent except in the case of death of an individual **Insured**.

If **You** die, **Your** rights and duties will be transferred to **Your** legal representative but only while acting within the scope of duties as **Your** legal representative. Until **Your** legal representative is appointed, anyone having proper temporary custody of **Your** property will have **Your** rights and duties but only with respect to that property.

20. Valuation

All premiums, limits, retentions, **Damages**, **Claim Expenses** and other amounts under this **Policy** are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or another element of **Damages** and **Claim Expenses** under this **Policy** is stated in a currency other than United States of America dollars, payment under this **Policy** shall be made in United States dollars at the applicable rate of exchange as published in *The Wall Street Journal* as of the date the final judgment is reached. If the amount of the settlement is agreed upon or the other element of **Damages** or **Claim Expenses** is due, respectively, or if it is not published on such date, the rate as published on the next date of publication of *The Wall Street Journal* shall apply.

21. When a **Claim** is Payable

With respect to payment of **Claims**, this **Policy** will not apply until **You** are obligated to pay the amount of the **Retained Limit** covered under this **Policy**. When the amount of **Damages** and **Claim Expenses** has finally been determined as provided in Condition A. 7. Defense and Settlement, **We** will promptly indemnify **You** the amount of the **Damages** and **Claim Expenses** covered under this **Policy**.

If **We** are required or at **Our** sole discretion, elect to pay any amounts on behalf of an **Insured** within the **Retained Limit**, **You** will promptly reimburse **Us** for any such amounts.

B. Definitions

1. **Accident** means an unintended and unexpected harmful event, including continuous or repeated exposure to substantially the same general harmful conditions which results in **Bodily Injury** or **Property Damages**. All such exposure to substantially the same general conditions will be considered as arising out of one **Accident**.

2. **Administration** means:

   a. Giving counsel to employees with respect to an **Employee Benefits Program**;

   b. Interpreting an **Employee Benefits Program**;

   c. Handling of records in connection with an **Employee Benefits Program**; or

   d. Effecting enrollment, termination, or cancellation of employees under an **Employee Benefits Program**;

   provided such acts are authorized by **You**.

3. **Advertising Injury** means one or more of the following offenses:

   a. Libel, slander or defamation;

   b. Any infringement of copyright, title or slogan;

   c. Misappropriation of advertising ideas or style of doing business;

   d. Oral or written publication of material that violates a person's right of privacy;

   committed or alleged to have been committed in any advertisement, publicity article, broadcast, or telecast and arising out of **Your** advertising activities except if arising out of electronic chat rooms or bulletin boards.

 ©Chubb. 2016. All rights reserved.

HANNAH - 000274

4.  **Application** means all applications, including any attachments thereto, and all other information and materials submitted by or on behalf of the **Insured** to the **Insurer** in connection with the **Insurer** underwriting this **Policy** or any **Policy** of which this **Policy** is a direct or indirect renewal or replacement. All such applications, attachments, information and materials are deemed attached to and incorporated in this **Policy**.

5.  **Automobile** means a land motor vehicle, trailer, or semi-trailer designed for travel on public roads, including any attached machinery or equipment; but, does not include **Mobile Equipment**.

6.  **Bodily Injury** means physical injury to the body, sickness or disease, including death resulting from any of these at any time, and if arising out of the foregoing, mental anguish, mental injury, mental tension, emotional distress, disability, pain and suffering, shock or fright.

7.  **Claim** means:

    a.  A written demand against any **Insured** for monetary damages or non-monetary or injunctive relief;

    b.  A civil, administrative or regulatory proceeding against any **Insured** commenced by

        i.   The service of a complaint or similar pleading against any **Insured** seeking monetary damages or non-monetary or injunctive relief;

        ii.  The issuance of a notice of charge or formal investigative order, including without limitation any such proceeding by or in association with any federal, state or local governmental authority located anywhere in the world; or

        ii.  The service upon or other receipt by any **Insured** of a written notice or subpoena from the investigating authority identifying any **Insured** as an individual against whom a civil, administrative or regulatory investigation or proceeding is to be commenced;

        However, any complaint filed with the Equal Employment Opportunity Commission ("EEOC") shall not constitute a **Claim** until the EEOC has issued a "right to sue" letter or notice to the claimant;

    c.  A criminal proceeding against any **Insured** commenced by a return of an indictment, information, or similar document, or receipt or filing of a notice of charges;

    d.  An arbitration proceeding against any **Insured** seeking monetary damages or non-monetary or injunctive relief;

    e.  Solely with respect to Insuring Agreement A.2, a written request of the **Insured** to toll or waive a statute of limitations applicable to a **Claim** described in paragraphs a through d above;

        including any appeal therefrom.

        **Claim** does not mean a labor union grievance or complaint filed with a labor union.

8.  **Claim Expenses** means:

    a.  Reasonable and necessary attorneys' fees, expert witness fees and other fees and costs incurred by **Us**, or by an **Insured** with **Our** prior written consent, in the investigation and defense of covered **Claims**;

    b.  Reasonable and necessary premiums for any appeal bond, attachment bond or similar bond, provided that **We** shall have no obligation to apply for or furnish such bond; and

    c.  Pre-judgment and post-judgment interest awarded in any **Claim**.

    **Claim Expenses** shall not include wages, salaries, fees or costs of directors, officers or **Employees** of the **Insurer** or the **Insured**. **Claim Expenses** shall be reduced by any recoveries or salvages which have been paid or will be collected. **Claim Expenses** does not include **Crisis Management Expense**.

9.  **Damages** means compensatory damages, judgments and settlements which the **Insured** becomes legally obligated to pay on account of any **Claim**. **Damages** shall be reduced by any recoveries or salvages which have been paid or will be collected.

 ©Chubb. 2016. All rights reserved.

HANNAH - 000275

**Damages** does not include:

a. Any amount for which the **Insured** is not financially liable or legally obligated to pay;

b. Taxes, fines, penalties, or assessments;

c. Punitive or exemplary damages, or the multiple portion of any multiplied damage award;

d. Matters uninsurable under the laws pursuant to which this **Policy** is construed;

e. The cost to comply with any injunctive or other non-monetary or declaratory relief, including specific performance, or any agreement to provide such relief including any liability or costs incurred to modify any building or property to make it more accessible or accommodating to any person or any liability or costs in connection with any educational, sensitivity or other corporate program, policy or seminar;

f. **Crisis Management Expense**;

g. Liquidated damages, except to the extent specifically included as **Damages** below.

Solely with respect to the Public Officials & Employment Practices Liability and Miscellaneous Professional Liability coverage parts:

a. With respect to any **Claim** arising out of a **Employment Practices Violation**, **Damages** shall also mean:

    i. Front-pay and back-pay, except as otherwise stated below; and

    ii. Liquidated damages awarded pursuant to the Age Discrimination in Employment Act or the Equal Pay Act.

b. **Damages** does not include employment-related benefits, retirement benefits, perquisites, vacation and sick days, medical and insurance benefits, deferred cash incentive compensation or any other type of compensation; provided, however, this limitation:

    i. Does not include salary, wages, bonuses, commissions and non-deferred cash incentive compensation in a settlement or judgment for a **Employment Practices Violation**; and

    ii. Does not apply to a **Wrongful Act** in the **Administration** of **Your Employee Benefits Program**.

10. **Employee Benefit Program** means:

a. Group life insurance, group accident or health insurance, investment plans or savings plans, profit sharing plans, pension plans and stock subscription plans; or

b. Unemployment insurance, social security benefits, workers' compensation and disability benefits; provided for **Your Employees**.

11. **Employee** means any past or present full-time, part-time, temporary, or leased **Employee**(s) of the **Named Insured**.

For the purposes of **Employment Practices Violations**, this definition includes:

a. Applicants for employment with the **Named Insured**; and

b. Leased **Employees** but only to the extent of the **Named Insured's** obligation to provide indemnification to such leased **Employee**, not to exceed such obligation applicable to non-leased **Employees**.

12. **Employment Practices Violation** means any actual or alleged:

a. Wrongful dismissal or discharge or termination of employment, whether actual or constructive;

b. Employment related misrepresentation;

c. Violation of any federal, state, or local laws (whether common or statutory) concerning employment or discrimination in employment;

 ©Chubb. 2016. All rights reserved.

HANNAH - 000276

    d. **Sexual Harassment** or other unlawful workplace harassment;

    e. Wrongful deprivation of a career opportunity or failure to employ, promote or grant tenure;

    f. Wrongful discipline of **Employees**;

    g. Negligent evaluation of **Employees**;

    h. Failure to adopt adequate workplace or employment policies and procedures;

    i. Employment related libel, slander, defamation or invasion of privacy;

    j. **Retaliation**.

13. **Extended Reporting Period** means the period described in the section of any Coverage Part entitled **Extended Reporting Period** which period shall apply solely to such Coverage Part.

14. **Fungi** means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by **Fungi**.

15. **Impaired Property** means tangible property, other than **Your Product** or **Your Work** that cannot be used or is less useful because:

    a. It incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

    b. **You** have failed to fulfill terms of a contract or agreement;

if such property can be restored to use by:

    a. The repair, replacement, adjustment or removal of **Your Product** or **Your Work**; or

    b. **Your** fulfilling the terms of the contract or agreement.

16. **Incidental Medical Malpractice** means injury arising out of: (1) emergency medical services rendered or which should have been rendered to any person or persons during the **Policy Period** by any duly certified emergency medical technician or paramedic; or (2) medical services rendered or which should have been rendered to any person or persons during the **Policy Period** by any nurse who is employed by or acting on behalf of an **Insured** to provide such services, but is not employed at a hospital, clinic or nursing home facility.

17. **Insured** means each of the following to the extent set forth below:

    a. The **Named Insured**;

    b. While acting within the scope of their duties for the **Named Insured**:

        i. All persons who were, are now, or shall be **Your** lawfully elected or appointed officials;

        ii. Current or former members of commissions, boards or other units operated by **You** and under **Your** jurisdiction, provided such units are within the total operating budget included in the **Application**;

        iii. All of **Your** current or former **Employees**;

        iv. All persons who perform a service on a volunteer basis for **You**, provided such performance is under **Your** direction and control. This does not include any person working on retainer or as an independent contractor;

        v. All persons or organizations providing service to **You** under any mutual aid or similar agreement; or

        vi. The estate of any person in (i.) through (iv.) above;

    c. Any person or organization while acting as **Your** real estate manager;

©Chubb. 2016. All rights reserved.

HANNAH - 000277

d. With respect to **Mobile Equipment**, any person is an **Insured** under the General Liability Coverage Part while operating such equipment with **Your** permission;

e. With respect to a **Covered Automobile**, any person is an **Insured** under the Automobile Liability Coverage Part while operating the **Covered Automobile** with **Your** permission.

f. No person or organization is an **Insured** with respect to the conduct of any current or past partnership or joint venture that is shown as a **Named Insured** in the Declarations.

g. Solely with respect to the Public Officials & Employment Practices Liability Coverage Part, **Insured** also means:

    i. Elected or duly appointed officials and **Employees** of the **Named Insured** serving as a director or officer of a non-profit organization created and operated under Section 501c(3) of the Internal Revenue code of 1988, or as amended, for any **Wrongful Acts** they have committed in their respective capacities as a director or officer of such non-profit organization, provided that: (1) the appointment of such officials and **Employees** to serve as a director or officer of such non-profit organization is based solely upon such person's status as an official or **Employee** of the **Named Insured**; and (2) such official or **Employee** is directed in writing by the **Named Insured** to serve as a director or officer of such non-profit organization prior to beginning such service;

    ii. Elected or duly appointed officials and **Employees** of the **Named Insured** while acting at the written request of the **Named Insured** in their capacity as a duly appointed official of an outside entity which is recognized by the government as being tax-exempt;

provided however, coverage for such individuals referenced in f.i. and f.ii above shall be specifically excess over: (1) any indemnification provided by such outside entity to such individuals; or (2) any insurance purchased by such outside entity covering such individual, whether such insurance is primary, contributory, excess, or contingent, and notwithstanding any similar "other insurance" clause contained in such policy.

18. **Insurer** means the insurance company providing this insurance.

19. **Interrelated Wrongful Acts** means all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes.

20. **Law Enforcement Activities** means any of the official activities or operations of **Your** police force or any other public safety organization, including their agents or employees, which enforces the law and protects persons or property.

21. **Mobile Equipment** means any land vehicles including attached machinery or equipment that is not licensed for road use. However, this does not apply to equipment that is permanently attached to vehicles that are licensed for road use.

22. **Named Insured** means the person or organization first named in Item 1 of the Declarations.

23. **Occurrence** means:

a. With respect to **Bodily Injury** and **Property Damage**, an accidental happening including continuous or repeated exposure to substantially the same general harmful conditions which results in **Bodily Injury** or **Property Damage**. All such exposure to substantially the same general conditions will be considered as arising out of one **Occurrence**;

b. With respect to **Personal Injury**, only those offenses specified in the **Personal Injury** Definition. All damages arising out of substantially the same **Personal Injury** regardless of frequency, repetition, the number or kind of offenses, or number of claimants, will be considered as arising out of one **Occurrence**;

c. With respect to **Advertising Injury**, only the offenses listed in the **Advertising Injury** Definition. All damages arising out of substantially the same **Advertising Injury** regardless of frequency, repetition,

©Chubb. 2016. All rights reserved.

HANNAH - 000278

the number or kind of media used, the number or kind of offenses, or the number of claimants, will be considered as arising out of one **Occurrence**.

24. **Personal Injury** means one or more of the following offenses:

a. False arrest, false imprisonment, wrongful detention or malicious prosecution;

b. Libel, slander, defamation of character, or oral or written publication of material that violates a person's right of privacy, unless arising out of advertising activities in electronic chat rooms or bulletin boards;

c. Wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of the owner, landlord or lessor, or by a person claiming to be acting on behalf of the owner, landlord or lessor.

25. **Policy** means, collectively, the Declarations, the **Application**, this coverage form, Coverage Parts and any endorsements.

26. **Policy Period** means the period of time specified in Item 2 of the Declarations, subject to prior termination pursuant to Condition 18, Termination of the **Policy**.

27. **Pollutant(s)** means (a) any substance exhibiting any hazardous characteristics as defined by or identified on a list of hazardous substances issued by the United States Environmental Protection Agency or any federal, state, county, municipal or local counterpart thereof or any foreign equivalent; (b) any solid, liquid, gaseous or thermal irritant, contaminant or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials, including materials to be recycled, reconditioned, or reclaimed; and also (c) any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products, noise, **Fungi** or bacteria (not including to any **Fungi** or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption), lead or lead compounds or lead contained in any materials, and electric or magnetic or electromagnetic field radiation.

28. **Post-judgment Interest** means interest on the full amount of any judgment that accrues after entry of the judgment and before **We** have paid, offered to pay, or deposited in court, the part of the judgment that is within the applicable Limit of Insurance.

29. **Pre-judgment Interest** means interest added to settlements, verdicts, awards, or judgments that are within the applicable Limit of Insurance, based on the amount of time prior to the settlements, verdicts, awards or judgments, whether or not made part of the judgments.

30. **Professional Services** means services that may be legally performed only by a person holding a professional license to render such services.

31. **Property Damage** means physical injury to tangible property, including all resulting loss of use of such property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it.

32. **Retained Limit** means the applicable amounts shown in the Declarations or any applicable endorsement for **Retained Limit**.

33. **Retaliation** means a **Wrongful Act** of an **Insured** relating to or alleged to be in response to:

a. Disclosure or threat of disclosure by an **Employee** of the **Named Insured** to a superior or to any governmental agency of any act by an **Insured** which act is alleged to be a violation of any federal, state, local or foreign law, common or statutory, or any rule or regulation promulgated thereunder;

b. Actual or attempted exercise by an **Employee** of the **Named Insured** of any right that such **Employee** has under law, including rights under workers' compensation laws, the Family and Medical Leave Act, The Americans with Disabilities Act or any similar state or local law;

c. An **Employee** of the **Named Insured** filing a **Claim** under the Federal False Claims Act or any other federal, state, local or foreign whistle-blower law;

d. Strikes by **Employee**s of the **Named Insured**; or

HANNAH - 000279

e.   Political affiliation of an **Employee** of the **Named Insured**.

34.   **Sexual Abuse** means any actual, attempted or alleged criminal sexual conduct of a person by another person, or persons acting in concert, which causes physical and/or mental injuries. **Sexual Abuse** includes:  sexual molestation, sexual assault, sexual exploitation or sexual injury.

   **Sexual Abuse** does not include **Sexual Harassment.**

35.   **Sexual Harassment** means any actual or alleged unwelcome sexual advances, requests for sexual favors or other conduct of a sexual nature, of a person by another person, or persons acting in concert, which causes physical and/or mental injuries.  **Sexual Harassment** includes:

   a.   The above conduct when submission to or rejection of such conduct is made either explicitly or implicitly a condition of a person's employment, or a basis for employment decisions affecting a person; or

   b.   The above conduct when such conduct has the purpose or effect of unreasonably interfering with a person's work performance or creating an intimidating, hostile, or offensive work environment.

   **Sexual Harassment** does not include **Sexual Abuse**.

36.   **Suit** means a civil proceeding in which **Damages** because of **Bodily Injury**, **Property Damage**, **Personal Injury**, **Advertising Injury** or **Wrongful Act** to which the applicable Coverage Part applies, are alleged, including:

   a.   An arbitration proceeding in which such damages are alleged; or

   b.   Any other Alternative Dispute Resolution proceeding in which such damages are alleged.

37.   **Wrongful Act** means:

   a.   With respect to Insuring Agreement A.1 of the Public Officials & Employment Practices Liability Coverage Part, any negligent act, error, misstatement, misleading statement, or omission committed or attempted by the **Named Insured**, including **Administration** of **Your Employee Benefit Program,** or by any other **Insured** solely in the performance of duties for the **Named Insured**.

   b.   With respect to Insuring Agreement A.2 of the Public Officials & Employment Practices Liability Coverage Part, any **Employment Practices Violation** actually or allegedly committed by the **Named Insured**, or by any other **Insured** solely in the performance of duties for the **Named Insured**.

   c.   With respect to the Miscellaneous Professional Liability Coverage Part, any actual or alleged negligent act, error, omission, misstatement or misleading statement, **Personal Injury**, or **Advertising Injury** committed by the **Insured** in the **Insured's** performance or failure to perform **Miscellaneous Professional Services**.

   However, **Wrongful Act** does not include any actual or alleged network security or privacy breach, including but not limited to:

   a.   The failure or inability of the security of any computer system to prevent a computer attack or mitigate loss arising in whole or in part from a computer attack;

   b.   Physical theft, loss or mysterious disappearance of firmware, hardware (including components thereof) or hard copy files; or

   c.   The disclosure of an individual's name; address; telephone number; medical, healthcare or other health information; social security, drivers license or other government identification number; credit or debit card number; account numbers or histories; passwords or other personal information not lawfully available to the general public.

38.   **Your Product** means:

   a.   Any goods or products (other than real property) manufactured, sold, handled, distributed or disposed of by:

©Chubb. 2016. All rights reserved.

HANNAH - 000280

      i.   **You**;

     ii.   Others trading under **Your** name; or

    iii.   A person or organization whose business or assets **You** have acquired;

   b.  Containers (other than vehicles), materials, parts, or equipment furnished in connection with such goods or products.

39. **Your Work** means:

   a.  Work or operations performed by **You** or on **Your** behalf;

   b.  Materials, parts or equipment furnished in connection with such work or operations.

   **Your Work** includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of a. and b. above. **Your Work** also includes the providing of or failure to provide warnings or instructions.

The foregoing definitions shall apply equally to the singular and plural forms of the respective words.

C. Exclusions

All Coverage Parts included in this **Policy** also contain their own exclusions and are subject to any applicable exclusions in the Coverage Part and the following Exclusions that apply to all Coverage Parts except as otherwise expressly indicated:

The insurance under any Coverage Part in this **Policy** does not apply to:

1. Any liability arising out of the operation of the principles of eminent domain, condemnation, inverse condemnation, adverse possession, temporary or permanent taking.

2. Any **Claim** alleging, based upon, arising out of, or attributable to:

   a.  The violation of any price fixing, restraint of trade, monopolization, unfair trade practices or other violation of the Federal Trade Commission Act, the Sherman Anti-Trust Act, the Clayton Act or any other statutory provision regulating antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities, and any amendments thereto, or any rules or regulations promulgated thereunder, or any similar provision of any federal, state, or local statutory law or common law anywhere in the world;

   b.  Any (1) purchase, sale, offer of or solicitation of an offer to purchase or sell securities, or violation of any securities law, including provisions of the Securities Act of 1933, or the Securities Exchange Act of 1934, as amended; (2) violation of the Organized Crime Control Act of 1970 (commonly known as "Racketeer Influenced And Corrupt Organizations Act" or "RICO"), as amended; (3) any regulation promulgated under the foregoing laws; or (4) any federal, state, local or foreign laws similar to the foregoing laws (including "Blue Sky" laws), or regulating the same or similar conduct or services, whether such law is statutory, regulatory or common law;

   c.  The failure to pay any bond, interest on any bond, any debt, financial guarantee or debenture;

   d.  Alleging, based upon, arising out of or attributable to the failure to effect or maintain any insurance or bond, which shall include, but not be limited to, insurance provided by self-insurance arrangements, pools, self-insurance trusts, captive insurance companies, retention groups, reciprocal exchanges or any other plan or agreement of risk transfer or assumption. However, this exclusion shall not apply to **Claim Expenses**; or

   e.  Whether directly or indirectly, the performance of assets or invested funds or the failure to invest any funds.

3. Any **Claim** alleging, based upon, arising out of or attributable to any dishonest, fraudulent, criminal or malicious act, error or omission, or any intentional or knowing violation of the law by an **Insured**;

©Chubb. 2016. All rights reserved.

HANNAH - 000281

however, the **Insured** shall be reimbursed for the reasonable **Claim Expenses** incurred in such **Claim** if the **Insured** is not found liable for such act, error, omission or violation.

However, this exclusion does not apply to the Automobile Liability Coverage Part or to that part of any **Claim** for an **Employment Practices Violation**.

4.  Any **Insured's** activities in an investing or fiduciary capacity including but not limited to, any **Employee Benefit Programs**, including any pension, savings or profit sharing plan or to any amounts or benefits due under any fringe benefit program, retirement program, incentive program, perquisite program, entitlement program or other benefits owed to any **Employee**, the **Administration** of any self-insurance fund or any obligations under the Employees' Retirement Income Security Act (ERISA) of 1974 or any amendments thereto or similar subsequent federal acts or any similar provisions of statutory or common law.

    This exclusion does not pertain to failure to execute required actions or mistaken actions committed in the **Administration** of **Your Employee Benefit Program**.

5.  Any **Damages** for any costs, civil fines, penalties or expenses levied or imposed against an **Insured** arising from any complaint or enforcement action from any federal, state, or local government regulatory agency.

6.  Any liability arising out of or attributable to:

    a.  The rendering or failure to render:

        Medical, surgical, dental, x-ray, or nursing service or treatment or the furnishing of food or beverages in connection therewith; or

        Any service or treatment related or conducive to health or of a professional nature;

    b.  The furnishing or dispensing of drugs, medical, dental, or surgical supplies or appliances;

    c.  Any service by a person as a member of a formal accreditation or similar professional board or committee, or as a person charged with the duty of executing directives of any such board or committee; or

    d.  Any blood product handled or distributed by an **Insured** or any service related thereto, including any allegation of reliance upon any representation or warranty made at any time with respect to blood products.

    However, with respect to the General Liability Coverage Part, this exclusion does not apply to **Incidental Medical Malpractice**.

7.  The rendering or failure to render any **Professional Services**, provided, however, this exclusion shall not apply to:

    a.  **Professional Services** provided by any full-time or part-time **Employee** acting as a lawyer or accountant and providing such services solely to the **Named Insured**; and

    b.  The Miscellaneous Professional Services Liability Coverage Part.

8.  With respect to **Law Enforcement Activities**, any **Claims**, **Damages** or **Suits** directly or indirectly arising out of:

    a.  Any willful violation, or any violation in which any **Insured** had knowledge of or consented to the violation, of any federal, state or local ordinance, rule, or regulation, or any willful violation of a penal statute;

    b.  The failure to arrest or detain any person;

    c.  Any part of any **Claim** or **Suit** seeking relief or redress in any form other than money damages including but not limited to, injunctive relief, declaratory relief, any other equitable remedies, including actions brought:

HANNAH - 000282

i.   To improve the physical conditions of any facility; or

ii.  To improve the living conditions of any person being held in any facility;

d.  The providing or failing to provide any form of health care services, except for (i) first aid which is limited to the rendering of emergency medical treatment at the time of an **Accident** or (ii) actual or alleged denial of access to health care services.

e.  Any injury to any volunteer who is injured in the conduct of **Your Law Enforcement Activities** within the scope of their duties for **You**.

9.  Any premium, assessment, penalty, fine, benefit or other obligation imposed by any Workers' Compensation Law, unemployment compensation or disability benefits law, the Jones Act, General Maritime Law, the Federal Employers' Liability Act, Federal Employee Compensation Act, the Defense Base Act, U.S. Longshoremen's and Harbor Workers' Compensation Act, Federal Coal Mine Health and Safety Act, any federal occupational disease law; any amendments to such laws or under any similar law for which **You**, or any insurance company as **Your** insurer, may be held liable; or for which an **Insured** is a qualified self-insurer.

10.  Any liability, whether direct or indirect, arising out of **Sexual Abuse** by an **Insured**.

11.  Any liability for which any **Insured** may be held liable by reason of:

a.  Causing or contributing to the intoxication of any person;

b.  The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

c.  Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

However, this exclusion only applies if **You** are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. This exclusion does not apply to the Automobile Liability Coverage Part.

12.  Any:

a.  Liability arising from the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants**; or

b.  Loss, cost or expense arising out of any:

i.   Request, demand or order that an **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of **Pollutants**; or

ii.  Any **Claim** by or on behalf of governmental authority or others for **Damages** because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **Pollutants**.

With respect to the General Liability Coverage Part, this exclusion does not apply to:

1.  **Bodily Injury** or **Property Damage** caused by heat, smoke or fumes from a Hostile Fire. As used herein, Hostile Fire means a fire which becomes uncontrollable or breaks out from where it was intended to be;

2.  **Bodily Injury** if sustained within a building owned or occupied by, or rented or loaned to, any **Insured** and caused by smoke, fumes, vapor, or soot from equipment used to heat that building.

With respect to the Automobile Liability Coverage Part, this exclusion does not apply to **Accidents** that occur away from premises owned or rented to an **Insured** with respect to **Pollutants**, but only if:

1.  The **Pollutants** or any property in which the **Pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of a **Covered Automobile**; and

HANNAH - 000283

2. The discharge, dispersal, seepage, migration, release or escape of the **Pollutants** is caused directly by such upset, overturn or damage; and

3. The **Pollutants** were not in, upon or released from the **Covered Automobile**.

Paragraph 3. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar **Pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the **Covered Automobile** or its parts, if:

    a. The **Pollutants** escape, seep, migrate, or are discharged, dispersed or released directly from an **Automobile** part designed by its manufacturer to hold, store, receive or dispose of such **Pollutants**; and

    b. The **Bodily Injury** or **Property Damage** does not arise out of the operation of **Mobile Equipment**.

13. Any liability arising out of:

    a. Inhaling, ingesting or physical exposure to asbestos or goods or products containing asbestos;

    b. The use of asbestos in constructing or manufacturing of, or presence of asbestos in any good, product, or structure;

    c. The manufacture, transportation, storage or disposal of asbestos or goods or products containing asbestos; or

    d. Payment for investigation or defense of any loss, fine or penalty; or for any expense or **Claim**; related to a., b. or c. above.

14. Any loss, cost or expense arising out of, resulting from, caused by or contributed to by:

    a. The toxic or pathological properties of lead, lead compounds or lead contained in any materials;

    b. The abatement, mitigation, removal, or disposal of lead, lead compounds or lead contained in any materials;

    c. Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with a. and b. above; or

    d. Any obligation to share **Damages**, remediation or other relief or compensation of any kind with, or to repay someone else who must pay such **Damages** in connection with a., b. or c. above.

15. Any liability arising out of the complete or partial failure to adequately supply gas, oil, water, electricity, steam or sewerage service.

16. Any liability, whether direct or indirect, arising out of, caused by, resulting from, contributed to, or aggravated by the subsidence, expansion, settling, sinking, slipping, falling away, caving in, shifting, eroding, mudflow, rising, tilting or any other land or earth movement.

17. Any liability arising out of the ownership, maintenance, loading or unloading, control, use or operations of any aircraft, airfields, runways, hangers, buildings, or other properties in connection with aviation activities.

This exclusion applies even if the **Claims** against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured**.

However, with respect to the General Liability Coverage Part, this exclusion does not apply to liability for the premises of buildings or other properties to which the general public is admitted.

18. Any liability arising out of the ownership, maintenance, operation, use loading or unloading or entrustment to others of any watercraft owned or operated by an **Insured** or rented, loaded, or chartered by or on behalf of an **Insured**.

©Chubb. 2016. All rights reserved.

HANNAH - 000284

This exclusion applies even if the **Claims** against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured**.

However, with respect to the General Liability Coverage Part, this exclusion does not apply to:

a. Watercraft while ashore on premises an **Insured** owns or rents;

b. Watercraft not owned by an **Insured** that is less than 51 feet long and not being used to carry persons or property for a charge.

19. Any liability arising out of the ownership, maintenance, operation, control, use or operations of any landfill or disposal site or other properties in conjunction with landfill or disposal site activities.

However, with respect to the General Liability Coverage Part, and subject to the Pollution Exclusion (Exclusion 12), which does apply in all cases, this exclusion does not apply to liability arising out of the use or maintenance of the premises, buildings or other areas of such properties to which the general public is admitted.

20. Any liability arising out of collapse, flooding, cracking, settling, seepage, underseepage, spillage, subsidence, landslide or earth movement of any dam, spillway, levee or reservoir.

21. Any:

a. **Claim** by an **Insured** against any other **Insured**; and

b. Injury or **Damage** to the spouse, child, parent, brother and sister of the **Insured** as a consequence of a. above.

However, this exclusion does not apply: (1) with respect to **Claims** against the **Named Insured** to the extent coverage is provided for **Employment Practices Violations** for a **Claim** by an **Employee**; or (2) to any **Claim** brought or maintained by any natural person **Insured** in the form of a cross-claim or a third-party claim for contribution or indemnity which is part of, and results directly from, a **Claim** that is covered by this **Policy**.

22. Any liability arising from the use of trampolines or other rebounding equipment.

23. Any liability, cost or expense arising out of, resulting from, or in any way related to, in whole or in part, the respiration, inspiration, inhalation or breathing in of dust or particulate matter. Dust or particulate matter may include, but is not limited to: dust, particulate matter, inspirable dust, respirable dust, smoke, mist, dirt, fibers, grit, soot, salt, acids, bases, metals, aerosols, crystals, minerals, sand, silicates, or silica.

24. Any liability an **Insured** may have, directly or indirectly, occasioned by, happening through, or in consequence of:

a. War, including undeclared or civil war;

b. Warlike action by a military force including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents;

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

d. Confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

25. Any liability arising out of or allegedly arising out of exposure to or contact with electromagnetic field radiation.

26. Any:

a. Injury, **Damage**, expense, cost, loss, liability or legal obligation which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any **Fungi** or bacteria on or within a building or structure,

HANNAH - 000285

including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or **Damage**; or

b.  Loss, cost or expenses arising out of abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effect of **Fungi** or bacteria, by any **Insured** or by any other person or entity.

This exclusion does not apply to any **Fungi** or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

27. Any liability for **Personal Injury** or **Advertising Injury** arising out of **Your** advertising activities in electronic chat rooms or bulletin boards.

28. Any liability:

With respect to which an **Insured** under this **Policy** is also an **Insured** under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors, or would be an **Insured** under any such policy but for its termination upon exhaustion of its limit of liability; or

Resulting from the **Hazardous Properties** of **Nuclear Material** and with respect to which:

i.  Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

ii.  An **Insured** is, or had this **policy** not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization;

For any expenses incurred with respect to **Bodily Injury** resulting from the **Hazardous Properties** of **Nuclear Material** and arising out of the operation of a **Nuclear Facility** by any person or organization.

Resulting from the **Hazardous Properties** of **Nuclear Material**, if:

i.  The **Nuclear Material**:

1.  Is at any **Nuclear Facility** owned by, or operated by or on behalf of, an **Insured**; or

2.  Has been discharged or dispersed therefrom;

ii.  The **Nuclear Material** is contained in **Spent Fuel** or **Waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **Insured**; or

iii.  Arising out of the furnishing by an **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **Nuclear Facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (iii.) applies only to **Property Damage** to such **Nuclear Facility** and any property at such **Nuclear Facility**.

As used in this exclusion:

i.  **Hazardous Properties** means radioactive, toxic or explosive properties.

ii.  **Nuclear Material** means **Source Material**, **Special Nuclear Material** or **By-product Material**.

**Source Material**, **Special Nuclear Material**, and **By-product Material** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

iii.  **Spent Fuel** means any fuel component, solid or liquid, which has been used or exposed to radiation in a **Nuclear Reactor**.

iv.  **Waste** means any **Waste** material:

©Chubb. 2016. All rights reserved.

HANNAH - 000286

Containing **By-product Material** other than the tailings or **Wastes** produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **Source Material** content; and

Resulting from the operation by any person or organization of any **Nuclear Facility**.

v. **Nuclear Facility** means:

Any **Nuclear Reactor**;

Any equipment or device designed or used for:

    a. Separating the isotopes of uranium or plutonium,

    b. Processing or utilizing **Spent Fuel**, or

    c. Handling processing or packaging **Waste**;

Any equipment or device used for the processing, fabricating or alloying of **Special Nuclear Material** if at any time the total amount of such material in the custody of an **Insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **Waste**;

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premiums used for such operations.

vi. **Nuclear Reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

vii. **Property Damage** as defined in this exclusion only means physical injury to tangible property, including all resulting loss of use of such property; and includes all forms of radioactive contamination of property.

©Chubb. 2016. All rights reserved.

HANNAH - 000287



**Chubb Advantage<sup>SM</sup>**
**Public Entity**
**Retained Limits Policy**

## GENERAL LIABILITY COVERAGE PART

**THE LIMITS OF INSURANCE AVAILABLE TO PAY INSURED DAMAGES SHALL BE REDUCED BY AMOUNTS INCURRED FOR CLAIMS EXPENSES. AMOUNTS INCURRED FOR DAMAGES AND CLAIMS EXPENSES SHALL ALSO BE APPLIED AGAINST THE RETAINED LIMIT AMOUNTS.**

In consideration of the payment of the premium, in reliance upon the **Application**, and subject to the Declarations and the terms and conditions of this **Policy**, the **Insureds** and the **Insurer** agree as follows:

A.  Insuring Agreement

The **Insurer** will indemnify the **Insured** for **Damages** and **Claim Expenses** in excess of the **Retained Limit** for which the **Insured** becomes legally obligated to pay because of a **Claim** first arising out of an **Occurrence** happening during the **Policy Period** in the Coverage Territory for **Bodily Injury**, **Personal Injury**, **Advertising Injury**, or **Property Damage** taking place during the **Policy Period**.

No other obligation to pay any additional sums, perform acts or provide services is covered.

B.  Retained Limit

The **Insurer's** liability under this **Policy** applies only to **Damages** and **Claims Expenses** which are in excess of the **Retained Limit** applicable to this Coverage Part and specified in Item 4. A of the Declarations. The **Retained Limit** must be borne by the **Insured** as an uninsured amount and at its own risk.  This will be true regardless of:

1.  The number of persons and organizations who are **Insureds** under this **Policy**;

2.  The number of **Claims** made against any or all **Insureds**; or

3.  The number of persons or organizations making **Claims**.

C.  Limits of Insurance

1.  Subject to subsection 2 below, the **Insurer's** maximum liability for all **Damages** and **Claim Expenses** resulting from each **Occurrence** under this Coverage Part will not exceed the General Liability Coverage Part Each Occurrence Limit of Insurance specified in Item 5. A of the Declarations. This will be true regardless of:

    a.  The number of persons and organizations who are **Insureds** under this **Policy**;

    b.  The number of **Claims** made against any or all **Insureds**; or

    c.  The number of persons or organizations making **Claims**.

2.  The **Insurer's** maximum liability for all **Damages** and **Claim Expenses** resulting from all **Claims** under this Coverage Part will not exceed the General Liability Coverage Part Aggregate Limit of Insurance specified in Item 5. A of the Declarations which is the most the **Insurer** will indemnify for **Damages** and **Claim Expenses** under this Coverage Part during the **Policy Period**.

3.  **Claim Expenses** will be part of and not in addition to the Aggregate Limit of Insurance stated in Item 5. A of the Declarations, and shall reduce such Aggregate Limit of Insurance. If the Aggregate Limit of Insurance is exhausted by payment of **Damages** and **Claim Expenses**, the obligations of the **Insurer** under this **Policy** shall be completely fulfilled and extinguished. The **Insurer** will indemnify the **Insured** for **Damages** and **Claim Expenses** only as they become due and payable by the **Insureds**, without consideration of other future payment obligations.

4.  All **Claims** arising out of the same **Occurrence** and all interrelated **Occurrences** shall be deemed to be one **Claim**, and such **Claim** shall be deemed to first occur on the date the earliest of such **Claims** first occurs, regardless of whether such date is before or during the **Policy**

 ©Chubb. 2016. All rights reserved.

HANNAH - 000288

**Period**. All **Damages** and all **Claim Expenses** resulting from a single **Claim** shall be deemed a single **Damage** and **Claim Expense.**

D. Exclusions

The following exclusions apply to this Coverage Part in addition to the exclusions in the Common Conditions, Definitions and Exclusions section of this **Policy**.

The insurance under this Coverage Part does not apply to:

1. Any **Bodily Injury**, **Property Damage**, **Personal Injury**, or **Advertising Injury** for which coverage is provided under any other Coverage Part of this **Policy**.

2. **Bodily Injury** or **Property Damage** either expected or intended from the standpoint of an **Insured**.  This exclusion does not apply:

   a. To **Bodily Injury** resulting from the use of reasonable force to protect persons or property; or

   b. To **Law Enforcement Activities**, subject to Exclusion 8 of Common Conditions, Definitions, and Exclusions.

3. **Advertising Injury** or **Personal Injury** caused by or at the direction of an **Insured** if the **Insured** knew or reasonably should have known that the act would violate the rights of another and would inflict **Advertising Injury** or **Personal Injury**.

4. An **Insured**'s obligation to pay by reason of the assumption of liability in a contract or agreement. However, this exclusion does not apply to liability for **Damages**:

   a. That an **Insured** would have in the absence of the contract or agreement; or

   b. Assumed in a contract or agreement that is an **Insured Contract** provided the **Bodily Injury** or **Property Damage** occurs subsequent to the effective date of the **Insured Contract** and such **Insured Contract** was in effect at the inception of the **Policy Period** or becomes effective during the **Policy Period**.

5. **Bodily Injury** to:

   a. An **Employee** of an **Insured** arising out of and in the course of:

      i. Employment by an **Insured**; or

      ii. Performing duties related to the conduct of an **Insured**'s business; or

   b. The spouse, child, parent, brother or sister of that **Employee** as a consequence of a. above.

   This exclusion applies:

   a. Whether an **Insured** may be liable as an employer or in any other capacity; and

   b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

   However, this exclusion does not apply to liability assumed by an **Insured** under an **Insured Contract**.

6. Any liability arising out of:

   a. Any **Employment Practices Violation**;

   b. The **Administration** of **Your Employee Benefit Program**;

   c. Any form of discrimination; or

   d. Any violation of civil rights.

   However, this exclusion does not apply to **Law Enforcement Activities**, subject to Exclusion 8 of Common Conditions, Definitions and Exclusions.

©Chubb. 2016. All rights reserved.

HANNAH - 000289

7. Any **Property Damage** to:

   a. Property owned, occupied or leased by an **Insured** or purchased by an **Insured** under an installment sales contract or property on consignment to an **Insured**;

   b. Property loaned to an **Insured**;

   c. **Personal Property** in the care, custody, or control of an **Insured**, provided however, this sub-paragraph c. does not apply to **Law Enforcement Activities**, subject to Exclusion 8 of Common Conditions, Definitions and Exclusions;

   d. Premises **You** sell, give away or abandon, if the **Property Damage** arises out of any part of those premises;

   e. That particular part of real property on which **You** or any of **Your** contractors or subcontractors working directly or indirectly on **Your** behalf are performing operations, if the **Property Damage** arises out of those operations; or

   f. That particular part of any property that must be restored, repaired or replaced because **Your Work** was incorrectly performed on it.

8. Any **Property Damage** to:

   a. **Your Work** arising out of the work or out of materials, parts or equipment that is furnished with such work;

   b. **Your Product** or arising out of **Your Product** or any part of it; or

   c. **Impaired Property** or property not physically injured, arising out of a defect, deficiency, inadequacy or dangerous condition in **Your Product** or **Your Work**, or a delay or failure by **You** or anyone acting on **Your** behalf to perform a contract or agreement in accordance with its terms.

   However, this exclusion does not apply to the loss of use or use of property of another arising out of unexpected and unintended physical injury to **Your Product** or **Your Work** after it has been put to its intended use.

9. **Advertising Injury** resulting from:

   a. Failure of performance of contract, but this exclusion does not apply to **Claims** for misappropriation of ideas based upon alleged breach of an implied contract;

   b. Incorrect description of any article or commodity;

   c. Any mistake in advertised price; or

   d. Failure of goods, products or services to conform with advertised quality or performance.

10. **Personal Injury** arising out of:

    a. Oral or written publication of material, if done by or at the direction of an **Insured** with knowledge of its falsity;

    b. Oral or written publication of material whose first publication took place before the beginning of the **Policy Period**.

11. **Bodily Injury** or **Property Damage** arising out of:

    a. The ownership, entrustment, maintenance, operation, use, loading or unloading of **Automobiles**; or while **Automobiles** are being transported; or

    b. The transportation of **Mobile Equipment** by an **Automobile** owned or operated by or rented or loaned to any **Insured**.

    This exclusion applies even if the **Claims** against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by that **Insured**.

 ©Chubb. 2016. All rights reserved.

HANNAH - 000290

This exclusion does not apply to liability for **Bodily Injury** or **Property Damage** arising from **Automobiles** not owned, leased, rented, or operated by an **Insured**.

12. **Damages** arising out of the loss of, the loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

    As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

13. **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** arising directly or indirectly out of any action or omission that violates or is alleged to violate:

    a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

    b. The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

    c. The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

    d. Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

E. Definitions

The following definitions apply to this Coverage Part in addition to the definitions in the Common Conditions, Definitions and Exclusions section of this **Policy**.

1. **Insured Contract** means:

    a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises rented to **You** or temporarily occupied by **You** with permission of the owner is not an **Insured Contract**.;

    b. A sidetrack agreement;

    c. Any easement or license agreement except in connection with vehicle or pedestrian private railroad crossings at grade;

    d. Any other easement agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    e. A mutual aid assistance agreement or contract between political subdivisions;

    f. An elevator maintenance agreement;

    g. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    h. That part of any other written contract or written agreement pertaining to **Your** business (including an indemnification of a municipality in connection with work performed for a municipality) under which **You** assume the tort liability of another party to pay for **Bodily Injury** or **Property Damage** to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

    An **Insured Contract** does not include that part of any contract or agreement:

    i. That indemnifies a railroad for **Bodily Injury** or **Property Damage** arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

    ii. That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

©Chubb. 2016. All rights reserved.

HANNAH - 000291

      a.  Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      b.  Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   iii.  Under which the **Insured**, if an architect, engineer, or surveyor, assumes liability for an injury or damage arising out of the **Insured's** rendering or failure to render professional services, including those listed in ii. above and supervisory, inspection, architectural or engineering activities.

2.  **Personal Property** means any property other than real property or fixtures.

 ©Chubb. 2016. All rights reserved.

HANNAH - 000292



**Chubb Advantage**<sup>SM</sup>
**Public Entity**
**Retained Limits Policy**

### AUTOMOBILE LIABILITY COVERAGE PART

**THE LIMITS OF INSURANCE AVAILABLE TO PAY INSURED DAMAGES SHALL BE REDUCED BY AMOUNTS INCURRED FOR CLAIMS EXPENSES. AMOUNTS INCURRED FOR DAMAGES AND CLAIMS EXPENSES SHALL ALSO BE APPLIED AGAINST THE RETAINED LIMIT AMOUNTS.**

In consideration of the payment of the premium, in reliance upon the **Application**, and subject to the Declarations and the terms and conditions of this **Policy**, the **Insured** and the **Insurer** agree as follows:

## A. Insuring Agreements

The **Insurer** will indemnify the **Insured** for **Damages** and **Claim Expenses** in excess of the **Retained Limit** for which the **Insured** become legally obligated to pay because of a **Claim** arising out of an **Accident** taking place during the **Policy Period** for **Bodily Injury** or **Property Damage** and resulting from the ownership, maintenance or use of a **Covered Automobile** in the Coverage Territory.

No other obligation to pay any additional sums or provide services is covered.

## B. Retained Limit

The **Insurer's** liability under this **Policy** applies only to **Damages** and **Claim Expenses** which are in excess of the **Retained Limit** applicable to this Coverage Part and specified in Item 5.B of the Declarations. The **Retained Limit** must be borne by the **Insured** as an uninsured amount and at its own risk. This will be true regardless of:

1. The number of persons and organizations who are **Insureds** under this **Policy**;
2. The number of **Claims** made against any or all **Insureds**; or
3. The number of persons or organizations making **Claims**.

## C. Limits of Insurance

1. Subject to subsection 2 below, the **Insurer's** maximum liability for all **Damages** and **Claim Expenses** resulting from each **Claim** under this Coverage Part will not exceed the Automobile Liability Coverage Part Each Accident Limit of Insurance specified in Item 5.B of the Declarations. This will be true regardless of:

   a. The number of persons and organizations who are **Insureds** under this **Policy**;
   b. The number of **Claims** made against any or all **Insureds**;
   c. The number of persons or organizations making **Claims**;
   d. The number of vehicles involved in the **Accident**; or
   e. Premiums paid.

2. The **Insurer** will indemnify the **Insured** for **Damages** and **Claim Expenses** only as they become due and payable by the **Insured**, without consideration of other future payment obligations.

3. All **Claims** arising out of the same **Accident** and all interrelated **accidents** shall be deemed to be one **Claim**, and such **Claim** shall be deemed to first occur on the date the earliest of such **Claims** first occurs, regardless of whether such date is before or during the **Policy Period.** All **Damages** and all **Claim Expenses** resulting from a single **Claim** shall be deemed a single **Damage** and **Claim Expense.**

   ©Chubb. 2016. All rights reserved.

HANNAH - 000293

D. Exclusions

The following exclusions apply to this Coverage Part in addition to the exclusions found in the Common Conditions, Definitions and Exclusions section of this **Policy**.

The insurance under this Coverage Part does not apply to:

1.  Any **Bodily Injury** or **Property Damage** for which coverage is provided under another Coverage Part of this **Policy**.

2.  **Covered Automobiles** while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity.  This insurance also does not apply to any **Covered Automobile** while it is being prepared for such contest or activity.

3.  **Bodily Injury** or **Property Damage** either expected or intended from the standpoint of an **Insured**.  But this exclusion does not apply to **Law Enforcement Activities**, subject to Exclusion 8 of Common Conditions, Definitions and Exclusions.

4.  An **Insured's** obligation to pay by reason of the assumption of liability in a contract or agreement. However, this exclusion does not apply to liability for **Damages**:

    a.  That an **Insured** would have in the absence of the contract or agreement; or
    b.  Assumed in a contract or agreement that is an **Insured Contract** provided the **Bodily Injury** or **Property Damage** first occurs subsequent to the effective date of the **Insured Contract**; and such **Insured Contract** was in effect at the inception of the **Policy Period** or becomes effective during the **Policy Period**.

5.  **Bodily Injury** to:

    a.  An **Employee** of an **Insured** arising out of and in the course of:
        i.   Employment by an **Insured**; or
        ii.  Performing duties related to the conduct of an **Insured's** business; or
    b.  The spouse, child, parent, brother or sister of that **Employee** as a consequence of a. above.

    This exclusion applies:
    a.  Whether an **Insured** may be liable as an employer or in any other capacity; or
    b.  To any obligation to share **Damages** with or repay someone else who must pay **Damages** because of the **Bodily Injury**.

    This exclusion does not apply to liability assumed by an **Insured** under an **Insured Contract**.

6.  Any **Property Damage** to or involving property owned or transported by an **Insured** or in an **Insured's** care, custody, or control.  But this exclusion does not apply to liability assumed under a sidetrack agreement or to **Law Enforcement Activities** subject to Exclusion 8 of the Common Conditions, Definitions and Exclusions.

7.  **Bodily Injury** or **Property Damage** resulting from the handling of property:
    a.  Before it is moved from the place where it is accepted by an **Insured** for the movement into or onto the **Covered Automobile**; or
    b.  After it is moved from the **Covered Automobile** to the place where it is finally delivered by an **Insured**.

8.  Any liability incurred by or imposed on an **Insured** under any Uninsured/Underinsured Motorist law, No Fault law or Personal Injury Protection law.

          ©Chubb. 2016. All rights reserved.

HANNAH - 000294

## E. Definitions

The following definitions apply in addition to the definitions found in the Common Conditions, Definitions and Exclusions section of this **Policy**.

1. **Covered Automobile** means an **Automobile**:
   a. **You** own, or **You** acquire during the **Policy Period**;
   b. **You** lease, hire, rent or borrow (this does not include an **Automobile** you lease, hire, rent or borrow from any of **Your Employees** or their domestic partners or any other member of their households);
   c. **You** do not own, lease, hire, rent, or borrow that is used in conjunction with **Your** business (this includes an **Automobile** owned by any **Insured** or members of their household but only while used in conjunction with **Your** business).

2. **Insured Contract** means:
   a. A lease of premises;
   b. A sidetrack agreement;
   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;
   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work on or within 50 feet of a railroad;
   e. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;
   f. That part of any other written contract or written agreement pertaining to **Your** business (including an indemnification of a municipality in connection with work performed for a municipality) under which **You** assume the tort liability of another party to pay for **Bodily Injury** or **Property Damage** to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.
   g. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by **You** or any of **your Employees**, of any **Automobile**.  However, such contract or agreement shall not be considered an **Insured Contract** to the extent that it obligates you or any of **Your Employees** to pay for **Property Damage** to any **Automobile** rented or leased by **You** or any of **Your Employees**.

   An **Insured Contract** does not include that part of any contract or agreement:

   i. That indemnifies any person or organization for **Bodily Injury** or **Property Damage** arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;
   ii. That pertains to the loan, lease, or rental of an **Automobile** to **You** or any of **Your Employees**, if the **Automobile** is loaned, leased or rented with a driver; or
   iii. That indemnifies or holds harmless a person or organization engaged in the business of transporting property or persons by **Automobile** for hire harmless for **Your** use of a **Covered Automobile** over a route or territory that person or organization is authorized to serve by public authority.

 ©Chubb. 2016. All rights reserved.

HANNAH - 000295



# Chubb Advantage℠ Public Entity Retained Limits Policy

## PUBLIC OFFICIALS & EMPLOYMENT PRACTICES LIABILITY COVERAGE PART

**THIS COVERAGE PART PROVIDES COVERAGE ON A CLAIMS MADE AND REPORTED BASIS. PLEASE READ THIS COVERAGE PART AND THE ENTIRE POLICY CAREFULLY.**

**CLAIM EXPENSES ARE SUBJECT TO A SEPARATE LIMIT. THE LIMITS OF INSURANCE AVAILABLE TO PAY INSURED DAMAGES SHALL BE REDUCED BY AMOUNTS INCURRED FOR CLAIM EXPENSES ONCE THE CLAIM EXPENSES LIMIT HAS BEEN EXHAUSTED. AMOUNTS INCURRED FOR DAMAGES AND CLAIM EXPENSES SHALL ALSO BE APPLIED AGAINST THE RETAINED LIMIT AMOUNT.**

In consideration of the payment of the premium, in reliance upon the **Application**, and subject to the Declarations and the terms and conditions of this **Policy**, the **Insured** and the **Insurer** agree as follows:

A.  Insuring Agreement

  1.  The **Insurer** will indemnify the **Insured** for **Damages** and **Claim Expenses** in excess of the **Retained Limit** for which the **Insured** becomes legally obligated to pay because of a **Claim** first made against the **Insured** and reported to the **Insurer** during the **Policy Period**, or if applicable, the **Extended Reporting Period**, for any **Wrongful Act** taking place on or subsequent to the **Retroactive Date** specified in Item 6 of the Declarations and prior to the end of the **Policy Period**.

  2.  The **Insurer** will indemnify the **Insured** for **Damages** and **Claim Expenses** in excess of the **Retained Limit** for which the **Insured** becomes legally obligated to pay because of a **Claim** first made against the **Insured** and reported to the **Insurer** during the **Policy Period**, or if applicable, the **Extended Reporting Period**, for any **Wrongful Act** taking place on or subsequent to the **Retroactive Date** specified in Item 6 of the Declarations and prior to the end of the **Policy Period** if such **Claim** is brought and maintained by or on behalf of any **Employee(s)** of the **Named Insured**.

  3.  The **Insurer** will pay on behalf of the **Named Insured** the **Crisis Management Expense** for which the **Named Insured** becomes legally obligated to pay by reason of a **Crisis Event** first occurring during the **Policy Period**, but only up to the limit of liability for the **Crisis Management Fund**.

B.  Retained Limit

  The **Insurer's** liability under this **Policy** applies only to **Damages** and **Claim Expenses** which are in excess of the **Retained Limit** applicable to this Coverage Part and specified in Item 4.C of the Declarations. This **Retained Limit** must be borne by the **Insured** as an uninsured amount and at its own risk.

  Notwithstanding the above, there shall be no **Retained Limit** applicable to **Damages** or **Claim Expenses** and the **Insurer** shall pay such **Damages** or **Claim Expenses** from the first dollar for **Claims** against natural person **Insureds** and for which such **Insureds** are not indemnified by the **Named Insured**, subject to all other terms and conditions of this **Policy**, including the Limit of Insurance.

  The **Named Insured** agrees to indemnify the aforementioned **Insured** to the fullest extent permitted by law, taking all steps necessary or advisable in furtherance thereof, including the making in good faith any application for court approval.

 ©Chubb. 2016. All rights reserved.

HANNAH - 000296

Notwithstanding anything in this section to the contrary, the **Named Insured's** indemnification obligations under this section shall not apply in the event the **Named Insured** is neither permitted nor required to grant such indemnification either because of the appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate the **Named Insured**, or because of the **Named Insured** becoming a debtor-in-possession.

C.  Limits of Insurance

1.  Subject to subsection 2 below, the **Insurer's** maximum liability for all **Damages** resulting from each **Claim** under this Coverage Part will not exceed the Public Officials & Employment Practices Liability Coverage Part Each Claim Limit of Insurance specified in Item 5.C of the Declarations.

2.  The **Insurer's** maximum liability for all **Damages** resulting from all **Claims** under this Coverage Part will not exceed the Public Officials & Employment Practices Liability Coverage Part Aggregate Limit of Insurance specified in Item 5.C of the Declarations, which is the most the **Insurer** will indemnify for **Damages** under this Coverage Part during the **Policy Period**.

3.  The **Insurer** shall pay **Claim Expenses** in excess of the applicable **Retained Limit** and up to an aggregate amount equal to the Public Officials & Employment Practices Liability Coverage Part Aggregate Limit of Insurance stated in Item 5.C of the Declarations without reduction of the applicable Limit of Insurance. The total amount of such **Claim Expense** payments by the **Insurer** shall be capped at the amount of the Limit of Insurance, and is not on a per **Claim** basis.

4.  Once the **Insurer** has paid the amount set forth in Item 5.C of the Declarations in aggregate **Claim Expenses** arising from or relating to any and all matters, all further payments by the **Insurer** of **Claim Expenses** shall reduce the applicable Limit of Insurance.

5.  The **Insurer** will indemnify the **Insured** for **Damages** and **Claim Expenses** only as they become due and payable by the **Insureds**, without consideration of other future payment obligations.

6.  All **Claims** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** of the **Insureds** shall be deemed to be one **Claim**, and such **Claim** shall be deemed to be first made on the date the earliest of such **Claims** is first made, regardless of whether such date is before or during the **Policy Period**. All **Damages** and all **Claim Expenses** resulting from a single **Claim** shall be deemed a single **Damage** and **Claim Expense**.

7.  The **Crisis Management Fund** is the **Insurer's** maximum liability for all **Crisis Management Expenses** arising for any and all **Crisis Events** occurring during the **Policy Period**.  This limit shall be the **Insurer's** maximum liability under this **Policy** regardless of the number of **Crisis Events** reported during the **Policy Period**. The **Insurer's** obligation to pay **Crisis Management Expense** terminates and ends upon the exhaustion of the **Crisis Management Fund**. The **Crisis Management Fund** shall be in addition to the aggregate Limit of Insurance set forth in Item 5.C of the Declarations.

D.  Definitions

The following definitions apply to this Coverage Part in addition to the definitions in the Common Conditions, Definitions and Exclusions section of this **Policy**.

1.  **Retroactive Date** means the date specified in Item 6.A of the Declarations for this Coverage Part.

2.  **Adverse Publicity** means the publication of unfavorable information regarding the **Named Insured** which can reasonably be considered to materially reduce public confidence in the competence, integrity or viability of the **Named Insured** to conduct business. Such publication must occur in a report about an **Insured** appearing in:

a.  A daily newspaper of general circulation;

b.  A magazine or other published periodical; or

©Chubb. 2016. All rights reserved.

HANNAH - 000297

    c.  A radio or television news program.

3.  **Crisis Event** means one of the following, except where coverage is otherwise excluded under the Common Conditions, Definitions and Exclusions or any Coverage Part of this **Policy**:

    a.  Management Event: The incapacity, death or state or federal criminal indictment of a natural person **Insured** for whom the **Named Insured** has purchased and continues to maintain key individual life insurance;

    b.  Funding Cancellation: The cancellation, withdrawal or revocation of $500,000 or more in funding, donations(s), grant(s) or bequest(s) by a non-government entity or person to the **Named Insured**;

    c.  Bankruptcy: The disclosure by the **Named Insured** of (i) its intention to file or its actual filing for protection under federal bankruptcy laws, or (ii) a third-party's intention to file or its actual filing of an involuntary bankruptcy petition under federal bankruptcy laws with respect to the **Named Insured**;

    d.  Employment Event: The disclosure by the **Named Insured** of the threatened or actual commencement by a third-party of an action, audit or investigation alleging an **Employment Practices Violation** by the **Named Insured** which has caused or is reasonably likely to cause **Adverse Publicity**; and

    e.  Material Event: Any other material event which, in the good faith opinion of the **Named Insured**, has caused or is reasonably likely to result in **Adverse Publicity**, but only if such material event is scheduled for coverage by written endorsement to this **Policy**.

4.  **Crisis Management Expense** means the following expenses incurred by the **Named Insured** during a period beginning ninety (90) days prior to and in reasonable anticipation of a **Crisis Event** and ending ninety (90) days after an actual or reasonably anticipated **Crisis Event**, irrespective of whether a **Claim** is actually made with respect to the subject **Crisis Event**; provided, however, that the **Insurer** must have been notified of the **Crisis Management Expense** within thirty (30) days of the date the **Named Insured** first incurs the subject **Crisis Management Expense:**

    a.  The reasonable and necessary expenses directly resulting from a **Crisis Event** which the **Named Insured** incurs for **Crisis Management Services** provided to the **Named Insured by a Crisis Management Firm**, and

    b.  The reasonable and necessary expenses directly resulting from a **Crisis Event** which the **Named Insured** incurs for (a) advertising, printing, or the mailing of matter relevant to the **Crisis Event**, and (b) out of pocket travel expenses incurred by or on behalf of the **Named Insured** or the **Crisis Management Firm**; provided, however, **Crisis Management Expense** does not include those amounts which otherwise would constitute compensation, benefits, fees, overhead, charges or expenses of an **Insured** or any of the **Insured's Employees**.

5.  **Crisis Management Firm** means a marketing firm, public relations firm, law firm, or other professional services entity retained by the **Insurer**, or by the **Named Insured** with the **Insurer's** prior written consent, to perform **Crisis Management Services** arising from a **Crisis Event**.

6.  **Crisis Management Fund** means $25,000.

7.  **Crisis Management Services** means the professional services provided by a **Crisis Management Firm** in counseling or assisting the **Named Insured** in reducing or minimizing the potential harm to the **Named Insured** caused by the public disclosure of a **Crisis Event**.

The foregoing definitions shall apply equally to the singular and plural form.

HANNAH - 000298

E.   Exclusions

Except as limited under Insuring Agreement 3 above, the following exclusions apply to this Coverage Part in addition to the exclusions in the Common Conditions, Definitions and Exclusions section of this **Policy**.

The **Insurer** shall not be liable for **Damages** or **Claim Expenses** on account of any **Claim**:

1.   Alleging, based upon, arising out of or attributable to any:

   a.   **Bodily Injury**, other than mental distress, mental injury, mental anguish, mental tension, pain and suffering, shock and humiliation arising out of an **Employment Practices Violation**;

   b.   **Property Damage**;

   c.   **Personal Injury,** other than libel, slander or defamation in any form arising out of a **Employment Practices Violation**;

   d.   **Advertising Injury**; or

   e.   Any allegation relating to the foregoing 1.a, 1.b, 1.c, and 1.d.. that an **Insured** negligently employed, investigated, supervised or retained a person, or based on an alleged practice, custom or policy and including, without limitation, any allegation that the violation of a civil right caused or resulted from such **Damages**, **Claim Expenses** or **Claim.**

2.   Alleging, based upon, arising out of or attributable to the return of taxes, assessments, penalties, fines, fees, or any award of salary, wages or earnings. However, this exclusion shall not apply to back pay or front pay.

3.   Alleging, based upon, arising out of or attributable to strikes, riots or civil commotions.

4.   Alleging, based upon, arising out of or attributable to the gaining in fact of any profit, remuneration or financial advantage to which any **Insured** was not legally entitled. However, this exclusion shall not apply to any **Claim** alleging **Employment Practices Violation**.

5.   Brought or maintained by, on behalf of, or in the right of any **Insured**. However, with respect to any **Claim** alleging any **Employment Practices Violation**, this exclusion shall only apply to cross-claims or counter-claims brought or maintained by, on behalf of, or in the right of one **Insured** against another **Insured**.

6.   Alleging, based upon, arising out of or attributable to breach of any express, implied, actual or constructive contract, warranty, guarantee or promise, unless such liability would have attached to the **Insured** even in the absence of such contract, warranty, guarantee or promise. However, this exclusion shall not apply to any **Claim** alleging any **Employment Practices Violation**.

7.   Alleging, based upon, arising out of or attributable to any actual or alleged liability assumed by the **Insured** under any express, implied, actual or constructive contract or any collective bargaining agreement, unless such liability would have attached to the **Insured** even in the absence of such contract or agreement.

8.   Alleging, based upon, arising out of or attributable to procurement, service, construction, architect, or engineer contracts, including but not limited to the **Insured's** intentional interference with such contracts.

9.   Alleging, based upon, arising out of or attributable to:

   a.   Any prior or pending litigation or administrative or regulatory proceeding filed on or before the effective date of this **Policy** or any similar policy which was issued to the **Named Insured** by the **Insurer** or any affiliate thereof and continuously renewed and maintained, for the same or substantially the same **Wrongful Act**, fact, circumstance or situation underlying or alleged therein; or

HANNAH - 000299

b. Any other **Wrongful Act** whenever occurring which, together with a **Wrongful Act** underlying or alleged in such prior or pending proceeding would constitute **Interrelated Wrongful Acts**.

10. Alleging, based upon, arising out of, or attributable to:

a. Any **Wrongful Act**, fact, circumstance or situation which has been the subject of any written notice given under any other policy of which this **Policy** is a renewal or replacement or which it succeeds in time; or

b. Any other **Wrongful Act** whenever occurring which, together with a **Wrongful Act** which has been the subject of such notice, would constitute **Interrelated Wrongful Acts**.

11. Alleging, based upon, arising out of or attributable to any **Wrongful Act** prior to the inception date of the first policy issued to the **Named Insured** by the **Insurer** or any affiliate thereof and continuously renewed and maintained, if, on or before such date, any **Insured** knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim**.

12. Alleging, based upon, arising out of or attributable to the validity, infringement, violation or misappropriation of any trade secret, copyright, patent, collective mark, certification mark, registered mark, service mark, trademark, trade dress, trade name, domain, title, slogan or service name or other intellectual property.

13. Alleging, based upon, arising out of or attributable to any violation of (i) the Employee Retirement Income Security Act of 1974; by (ii) any workers' compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law; (iii) the Fair Labor Standards Act (except the Equal Pay Act), (iv) the National Labor Relations Act, (v) the Worker Adjustment and Retraining Notification Act, (vi) the Consolidated Omnibus Budget Reconciliation Act, (vii) the Occupational Safety and Health Act; or any rules or regulations of any of such statutes or laws, amendments thereto or any similar provisions of any federal, state, local or foreign statutory law or common law; provided however, this exclusion shall not apply to that part of a **Claim** for **Retaliation**.

Further, this exclusion shall not apply to any actual or alleged failure to execute required actions or mistaken actions committed in the **Administration** of **Your Employee Benefit Program**.

14. Alleging, based upon, arising out of or attributable to any costs or liability incurred by any **Insured** to provide any reasonable accommodations required by, made as a result of, or to conform with the requirements of, the Americans With Disabilities Act of 1992, as amended, or any similar federal, state or local law, regulation or ordinance, including the modification of any building, property or facility to make it more accessible or accommodating to any disabled person.

15. Alleging, based upon, arising out of or attributable to any **Wrongful Act** for which coverage is afforded under any other Coverage Part of this **Policy**.

F. Extended Reporting Period

If the **Insurer** terminates or does not renew this **Policy** (other than for failure to pay a premium when due), or if the **Named Insured** terminates or does not renew this **Policy** and does not obtain replacement coverage as of the effective date of such termination or non-renewal, the **Named Insured** shall have the right to a continuation of the coverage granted by this **Policy** for at least one **Extended Reporting Period** as follows:

1. Automatic **Extended Reporting Period**

The **Named Insured** shall have continued coverage granted by this **Policy** for a period of 60 days following the effective date of such termination or non-renewal, but only for **Claims** first made during such 60 days and arising from **Wrongful Acts** taking place prior to the effective date of such termination or non-renewal. This Automatic **Extended Reporting Period** shall immediately expire upon the purchase of replacement coverage by the **Named Insured**.

2. Optional **Extended Reporting Period**

The **Named Insured** shall have the right, upon payment of the additional premium set forth in Item 7.A of the Declarations, to a continuation of the coverage granted by this **Policy** for an Optional **Extended Reporting Period** set forth in Item 7.B of the Declarations following the effective date of such termination or non-renewal, but only for **Claims** first made during such Optional **Extended Reporting Period** and arising from **Wrongful Acts** taking place prior to the effective date of such termination or non-renewal.

This right to continue coverage shall lapse unless written notice of such election is given by the **Named Insured** to the **Insurer**, and the **Insurer** receives payment of the additional premium, within 30 days following the effective date of termination or non-renewal.

The first 60 days of the Optional **Extended Reporting Period**, if it becomes effective, shall run concurrently with the Automatic **Extended Reporting Period**.

3.  The **Insurer** shall give the **Named Insured** notice of the premium due for the Optional **Extended Reporting Period** as soon as practicable following the date the **Named Insured** gives such notice of such election, and such premium shall be paid by the **Named Insured** to the **Insurer** within 10 days following the date of such notice by the **Insurer** of the premium due. The Optional **Extended Reporting Period** is not cancelable and the entire premium for the Optional **Extended Reporting Period** shall be deemed fully earned and non-refundable upon payment.

4.  The Automatic and Optional **Extended Reporting Periods** shall be part of and not in addition to the Limit of Insurance for the immediately preceding **Policy Period**. The purchase of the Optional **Extended Reporting Period** shall not increase or reinstate the Limits of Insurance, which shall be the maximum liability of the **Insurer** for the **Policy Period** and **Extended Reporting Periods** combined.

5.  A change in **Policy** terms, conditions, exclusions and/or premiums shall not be considered a non-renewal for purposes of triggering the rights to the Automatic or Optional **Extended Reporting Periods**.

HANNAH - 000301



**Chubb Advantage**<sup>SM</sup>
**Public Entity**
**Scholastic Entity**
**Retained Limits Policy**

### LIMITED AUTOMOBILE PHYSICAL DAMAGE COVERAGE PART

**Schedule**

| Retained Limit: | $150,000 |
|---|---|
| Each Accident Limit: | $2,000,000 |
| Physical Damage Aggregate: | $2,000,000 |

Covered Autos:

| No. | Description |
|---|---|
| | See Fleet by Department Schedule |
| | |
| | |
| | |

In consideration of the payment of the premium, in reliance upon the **Application**, and subject to the Declarations and the terms and conditions of this **Policy**, the **Insured** and the **Insurer** agree as follows:

A.  Insuring Agreements

The **Insurer** will indemnify the **Insured** for **Loss** in excess of the **Retained Limit** to a **Covered Auto** or its equipment that occurs while the **Covered Auto** is in **Operation**.

No other obligation to pay any additional sums or provide services is covered.

B.  Retained Limit

The **Insurer's** liability under this **Policy** applies only to **Loss** which is in excess of the **Retained Limit** applicable to this Coverage Part and specified in the Schedule above. The **Retained Limit** must be borne by the **Insured** as an uninsured amount and at its own risk.

C.  Limits of Insurance

1.  Subject to subsection 2 and 3 below, the **Insurer's** maximum liability for all **Loss** under this Coverage Part will not exceed the Physical Damage Aggregate specified in the Schedule above. This will be true regardless of:
    a.  The number of persons and organizations who are **Insureds** under this **Policy**;
    b.  The number of persons or organizations making **Claims**;
    c.  The number of **Covered Autos** involved in an **Accident**; or
    d.  Premiums paid.

2.  Subject to subsection 3 below, the Each Accident Limit is the most **We** will pay for the sum of all **Loss** for all **Covered Autos** involved in an **Accident**.

3.  The most **We** will pay for **Loss** to any one **Covered Auto** is the lesser of:
    a.  The actual cash value of the damaged or stolen property as of the time of the **Loss**; or
    b.  The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality;

©Chubb. 2016. All rights reserved.

HANNAH - 000302

4. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total **Loss**.

5. If a repair or replacement results in better than like kind or quality, **We** will not pay for the amount of the betterment.

D. Exclusions

The following exclusions apply to this Coverage Part in addition to the exclusions found in the Common Conditions, Definitions and Exclusions section of this **Policy**.

The insurance under this Coverage Part does not apply to:

1. **Loss** to a **Covered Auto** or its equipment if such **Covered Auto** is not in **Operation** at the time the **Loss** occurs.

2. Any **Bodily Injury**, **Personal Injury** or **Advertising Injury**.

3. Any **Property Damage** for which coverage is provided under any other Coverage Part of this **Policy**.

4. **Loss** to any of the following:

   a. Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

   b. Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.

   c. Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

   d. Any accessories used with the electronic equipment described in Paragraph 4.c. above.

   Exclusions 4.c. and 4.d. do not apply to:

   i. Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment (1) is permanently installed in the **Covered Auto** at the time of the **Loss** or (2) is removable from a housing unit which is permanently installed in the **Covered Auto** at the time of the **Loss**, and (3) is designed to be solely operated by use of the power from the **Covered Auto's** electrical system, in or upon the **Covered Auto**; or

   ii. Any other electronic equipment that is:

      1. Necessary for the normal operation of the **Covered Auto** or the monitoring of the **Covered Auto's** operating system; or

      2. An integral part of the same unit housing any sound reproducing equipment described in Paragraph a. above and permanently installed in the opening of the dash or console of the **Covered Auto** normally used by the manufacturer for installation of a radio.

5. **Loss** caused by or resulting from any of the following  unless caused by other **Loss** that is covered by this insurance:

   1. Wear and tear, freezing, mechanical or electrical breakdown.

   2. Blowouts, punctures or other road damage to tires.

 ©Chubb. 2016. All rights reserved.

HANNAH - 000303

6. **Loss** to any **Covered Auto** while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity.  **We** will also not pay for **Loss** to any **Covered Auto** while that **Covered Auto** is being prepared for such a contest or activity.

7. **Loss** to any **Covered Auto** due to **Diminution in Value**.

E. Conditions

The following Conditions apply to this Coverage Part in addition to the conditions in the Common Conditions, Definitions and Exclusions section of this **Policy**:

1. If **You** and **We** disagree on the amount of the **Loss**, either may demand an appraisal of the **Loss**.  In this event, each party will select a competent appraiser.  The two appraisers will select a competent and impartial umpire.  The appraiser will state separately the actual cash value and amount of **Loss**.  If they fail to agree they will submit their differences to the umpire.  A decision agreed to by any two will be binding.  Each party will:

   i. Pay its chosen appraiser; and
   ii. Bear the other expenses of the appraisal and umpire equally.

   If **We** submit to an appraisal, **We** still retain our right to deny the **Claim**.

2. Condition 8, Duties in the Event of Accident, Occurrence, Wrongful Act or Claim of Common Conditions, Definitions and Exclusions applies to **Loss**.

3. **We** have no duty to provide coverage under this Coverage Part unless there has been full compliance with the following duties and the Common Conditions as modified:
   a. In the event of **Loss**, **You** must give **Us** prompt notice of the **Loss**.  Include:
      i. How, when and where the **Loss** occurred;
      ii. To the extent possible, the names and addresses of any injured persons and witnesses.
   b. Additionally, **You** must:
      i. Assume no obligation, make no payment or incur no expense without our consent, except at **Your** own cost.
      ii. Cooperate with **Us** in the investigation or settlement of the **Claim** or defense against the **Suit**.
      iii. Promptly notify the police if the **Covered Auto** or any of its equipment is stolen.
      iv. Take all reasonable steps to protect the **Covered Auto** from further damage.  Also keep a record of **Your** expenses for consideration in the settlement of the **Claim**.
      v. Permit **Us** to inspect the **Covered Auto** and records proving the **Loss** before its repair or disposition.
      vi. Agree to examination under oath at **Our** request and give **Us** a signed statement of **Your** answers.

4. No one may bring a legal action against us under this Coverage Part until there has been full compliance with all the terms of this Coverage Part.

5. At **Our** option **We** may:
   a. Pay for, repair or replace damaged or stolen property;
   b. Return the stolen property, at **Our** expense.  **We** will pay for any **Damage** that results to the **Covered Auto** from the theft; or
   c. Take all or any part of the damaged or stolen property at an agreed or appraised value.

   If **We** pay for the **Loss**, **Our** payment will include the applicable sales tax for the damaged or stolen property.

6. **We** will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Part.

©Chubb. 2016. All rights reserved.

HANNAH - 000304

F.   Definitions

The following definitions apply in addition to the definitions found in the Common Conditions, Definitions and Exclusions section of this **Policy**.

1.   **Covered Auto** means an **Automobile** listed in the Schedule.

2.   **Loss** means direct and accidental loss or damage.

3.   **Diminution in Value** means the actual or perceived loss in market value or resale value which results from a direct and accidental **Loss**.

4.   **Operation** means (a) use or service in the course of an activity away from any building, car port, structure, space or lot where the **Covered Auto** is normally garaged, housed or stored, either permanently or temporarily while not in service or use, or (b) entering or exiting such building, car port, structure, space or lot.   **Operation** does not include being garaged, housed or in storage of any kind anywhere during weekends, holidays, vacations or similar extended periods of inactivity.

HANNAH - 000305

## DAM, RESERVOIR, LEVEE COVERAGE ENDORSEMENT (SUBLIMITED)

| Named Insured<br>City of East Point, GA | | | Endorsement Number<br>1 |
|---|---|---|---|
| Policy Symbol<br>PEP | Policy Number<br>G71527098 002 | Policy Period<br>June 19, 2020 to June 19, 2021 | Effective Date of Endorsement<br>June 19, 2020 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This Endorsement modifies insurance provided under the following:

### GENERAL LIABILITY COVERAGE PART
### PUBLIC ENTITY RETAINED LIMITS POLICY

### SCHEDULE

**Limits of Insurance:**

Each Occurrence Limit: $1,000,000
Aggregate Limit:       $1,000,000
SIR:                   $150,000

**Description of:**

Dam(s): East Point Reservoir Dam (Ben Hill)
Reservoir(s): n/a
Levee(s): n/a

---

A.  With respect to the General Liability Coverage Part only, Exclusion 20. of Section C. of Common Conditions, Definitions and Exclusions does not apply to the dam(s), levee(s) or reservoir(s) listed in the Schedule above.

B.  Subject to the Aggregate Limit shown in the Schedule above, the Each Occurrence Limit shown in the Schedule above is the most **We** will indemnify the **Insured** for **Damages** and **Claim Expenses** in excess of the General Liability **Retained Limit** shown in the Declarations, for **Property Damage** covered by virtue of this exception to Exclusion 20 in this endorsement.

C.  The Aggregate Limit for this endorsement is included in, and is not in addition to, the General Liability Aggregate Limit identified in the Declarations.


All other terms and conditions of this **Policy** remain unchanged.

_____
Authorized Representative

HANNAH - 000306

## EXCLUSION – HEAD TRAUMA INJURY

| Named Insured City of East Point, GA | | | Endorsement Number 2 |
|---|---|---|---|
| Policy Symbol PEP | Policy Number G71527098 002 | Policy Period June 19, 2020 to June 19, 2021 | Effective Date of Endorsement June 19, 2020 |
| Issued By (Name of Insurance Company) Illinois Union Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

### CHUBB ADVANTAGE PUBLIC ENTITY RETAIN LIMITS POLICY
### CHUBB ADVANTAGE SCHOLASTIC ENTITY RETAIN LIMITS POLICY

The following is added to **Section C. Exclusions** of the Common Conditions, Definitions and Exclusions;

This insurance does not apply to any injury, **Accident** ,**Damage**, **Claim**, **Claim Expenses**, liability or legal obligation arising from, directly or indirectly caused by, or in any way related to any **participant** in any **sporting event** that arises from, is directly or indirectly caused by, in whole or in part, or is in any way related to a **head trauma**.

This exclusion applies even if the **Claim** and/or allegations against any insured arise from, are directly or indirectly caused by, or in any way relate to the actual or alleged negligence or other wrongdoing in connection with:

1) making decisions regarding a **participant** playing, returning to play, participating, competing, coaching or officiating in, or trying out or training for any one or more  **sporting events**;
2) supervising, hiring, employing, training or monitoring others;
3) providing for or ensuring the safety or health of any **participant**;
4) providing a safe environment for any **participant;**
5) educating or warning anyone about the risks of participating in, practicing, training or trying out for any one or more **sporting events**;
6) providing medical care, diagnosis, treatment or advice;
7) establishing, promulgating, communicating, distributing, implementing or enforcing rules, regulations, protocols, policies, guidelines or procedures related to a **participant's** health or safety; or
8) failing to do any of 1) through 7) above.

The following definitions apply in the addition to the definitions found in the Common, Conditions, Definitions and Exclusions section of this **Policy**:

**Head trauma** means any direct or indirect impact, force, hits, or blows of any kind to, or transmitted to, the head, brain, neck or face.

**Participant** means any player, cheerleader, or any other person playing or competing in, trying out for, training or practicing for, or otherwise involved in any type of **sporting event**.  **Participant** does not include any individual traveling to or from a **sporting event**.

**Sporting event or sporting events** means any and all forms of a sporting or athletic event, activity, tournament, competition, contest, game, or exhibition, whether casual or organized, amateur or professional, non-profit or for-profit, and any practice or tryout for any of the above.

All other terms and conditions of this **Policy** remain unchanged.

HANNAH - 000307

**CHUBB**

## LAW ENFORCEMENT ACTIVITIES LIMITS

| Named Insured<br>City of East Point, GA | | | Endorsement Number<br>3 |
|---|---|---|---|
| Policy Symbol<br>PEP | Policy Number<br>G71527098 002 | Policy Period<br>June 19, 2020 to June 19, 2021 | Effective Date of Endorsement<br>June 19, 2020 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

#### PUBLIC ENTITY RETAINED LIMITS POLICY DECLARATIONS
#### GENERAL LIABILITY COVERAGE PART

It is agreed that the **Policy** is amended as follows:

1.  In the **PUBLIC ENTITY RETAINED LIMITS POLICY DECLARATIONS**, under Item 5. **Limits of Insurance**, the following limit is added to section A.:

    **Limit:** Law Enforcement Activities      Each **Occurrence**      $5,000,000

2.  In the **GENERAL LIABILITY COVERAGE PART**, the following is added to C. Limits of Insurance, paragraph 2.:

    The **Insurer's** maximum liability for all **Damages** and **Claim Expenses** resulting from all **Claims** under the Law Enforcement Activities Limit of Insurance will not exceed the General Liability Coverage Part Aggregate Limit of Insurance specified in Item 5. A of the Declarations which is the most the **Insurer** will indemnify for **Damages** and **Claim Expenses** under this Coverage Part during the **Policy Period**.

All Other Terms And Conditions Remain Unchanged.

_____

Authorized Representative



## EXCLUSION – VIRUS, BACTERIA OR MICROORGANISM THAT INDUCE PHYSICAL DISTRESS, ILLNESS OR DISEASE

| Named Insured City of East Point, GA | | | Endorsement Number 4 |
|---|---|---|---|
| Policy Symbol PEP | Policy Number G71527098 002 | Policy Period June 19, 2020 to June 19, 2021 | Effective Date of Endorsement June 19, 2020 |
| Issued By (Name of Insurance Company) Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**CHUBB ADVANTAGE℠ PUBLIC ENTITY RETAINED LIMITS POLICY COMMON CONDITIONS, DEFINITIONS AND EXCLUSIONS**

The **Policy** is amended at section C. Exclusions by adding the following exclusion:

The insurance under any Coverage Part in this **Policy** does not apply to any liability, loss, damage, injury, cost, or expense of any nature whatsoever caused by, or arising out of, related to, or resulting from, directly or indirectly, in whole or in part:

a. Any pathogen, virus, bacteria or other microorganism; or

b. Any action or inaction of the **Insured** or any action or order of a governmental representative, authority or agency undertaken to control, prevent, suppress, mitigate, test for, monitor, treat or remediate the actual, suspected, or anticipated presence, existence or transmission of any pathogen, virus, bacteria or other microorganism;

that actually or allegedly induces or is capable of inducing physical distress, illness or disease.

The addition of this exclusion does not imply that other policy provisions do not also exclude coverage for liability, loss, damage, injury, cost, or expense caused by, or arising out of, related to, or resulting from any pathogen, virus, bacteria or other microorganism.

All other terms and conditions of this **Policy** remain unchanged.

_____
Authorized Representative

C H U B B®

## RETAINED LIMIT AMENDED FOR SPECIFIED EVENTS

| Named Insured<br>City of East Point, GA | | | Endorsement Number<br>5 |
|---|---|---|---|
| Policy Symbol<br>PEP | Policy Number<br>G71527098 002 | Policy Period<br>June 19, 2020 to June 19, 2021 | Effective Date of Endorsement<br>June 19, 2020 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### CHUBB ADVANTAGE℠ PUBLIC ENTITY RETAINED LIMITS POLICY DECLARATIONS

Solely with respect to the event(s) specified in the Schedule below, Item 4. **Retained Limit** is amended by deleting A. General Liability Coverage Part and replacing it with the following:

A.   General Liability Coverage Part          Each **Occurrence**          $ 1,000,000

### SCHEDULE

| |
|---|
| **Name:**<br>Wednesday Wind Down in the Point<br>**Venue Name & Location:**<br>Downtown Commons<br>2757 East Point Street<br>East Point, GA 30344<br>**Event Date(s):**<br>06/24/20, 07/22/20, 08/26/20 |
| **Name:**<br>Indie Green Vegan Festival<br>**Venue Name & Location:**<br>Downtown Commons<br>2757 East Point Street<br>East Point, GA 30344<br>**Event Date:**<br>09/12/20 |

HANNAH - 000310

CHUBB®

All other terms and conditions remain unchanged.

_____

**Authorized Representative**

HANNAH - 000311

CHUBB®

## RETAINED LIMIT AMENDED FOR SPECIFIED EVENTS

| Named Insured<br>City of East Point, GA | | | Endorsement Number<br>6 |
|---|---|---|---|
| Policy Symbol<br>PEP | Policy Number<br>G71527098 002 | Policy Period<br>June 19, 2020 to June 19, 2021 | Effective Date of Endorsement<br>June 19, 2020 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### CHUBB ADVANTAGE℠ PUBLIC ENTITY RETAINED LIMITS POLICY DECLARATIONS

Solely with respect to the event(s) specified in the Schedule below, Item 4. **Retained Limit** is amended by deleting A. General Liability Coverage Part and replacing it with the following:

A.   General Liability Coverage Part       Each **Occurrence**       $ 1,000,000

### SCHEDULE

**Name:**

Salute to the Red, White & Blue

**Venue Name & Location:**

Downtown Commons

2757 East Point Street

East Point, GA 30344

**Event Date(s):**

07/04/20

All other terms and conditions remain unchanged.

_____
Authorized Representative

HANNAH - 000312

## GEORGIA CHANGES - CANCELLATION AND NONRENEWAL

| Named Insured<br>City of East Point, GA | | | Endorsement Number<br>7 |
|---|---|---|---|
| Policy Symbol<br>PEP | Policy Number<br>G71527098 002 | Policy Period<br>June 19, 2020 to June 19, 2020 | Effective Date of Endorsement<br>June 19, 2020 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

**I.** The Cancellation Condition is replaced by the following:

    **A. Cancellation**

        **1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation stating a future date on which the policy is to be cancelled, subject to the following:

            **a.** If only the interest of the first Named Insured is affected, the effective date of cancellation will be either the date we receive notice from the first Named Insured or the date specified in the notice, whichever is later. However, upon receiving a written notice of cancellation from the first Named Insured, we may waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the first Named Insured.

            **b.** If by statute, regulation or contract this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days notice to the first Named Insured and the third party as soon as practicable after receiving the first Named Insured's request for cancellation. Our notice will state the effective date of cancellation, which will be the later of the following:

                **(1)** 10 days from the date of mailing or delivering our notice, or

                **(2)** The effective date of cancellation stated in the first Named Insured's notice to us.

            **c.** Premium Refund

                **(1)** If this policy is cancelled, we will send the first Named Insured any premium refund due.

                **(2)** If we cancel, the refund will be pro rata, except as provided in c. below.

                **(3)** If the cancellation results from failure of the first Named Insured to pay, when due, any premium to us or any amount, when due, under a premium finance agreement, then the refund may be less than pro rata. Calculation of the return premium at less than pro rata represents a penalty charged on unearned premium.

                **(4)** If the first Named Insured cancels, the refund may be less than pro rata.

        **2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

            **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

            **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

        **3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

        **4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

HANNAH - 000313

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**II.** The following Condition supersedes any other provisions to the contrary.

If we decide to:

**1.** Cancel or nonrenew this policy; or

**2.** Increase current policy premium by more than 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages); or

**3.** Change any policy provision which would limit or restrict coverage;

Then:

We will mail or deliver notice of our action (including the dollar amount of any increase in renewal premium of more than 15%) to the first Named Insured and lienholder, if any, at the last mailing addresses known to us. We will mail or deliver notice at least:

**1.** 10 days before the effective date of cancellation if this policy has been in effect less than 60 days or if we cancel for nonpayment of premium; or

**2.** 45 days before the effective date of cancellation if this policy has been in effect 60 or more days and we cancel for a reason other than nonpayment of premium; or

**3.** 45 days before the expiration date of this policy if we decide to nonrenew, increase the premium or limit or restrict coverage.

_____

Authorized Agent

HANNAH - 000314

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

| Named Insured<br>City of East Point, GA | | | Endorsement Number<br>8 |
|---|---|---|---|
| Policy Symbol<br>PEP | Policy Number<br>G71527098 002 | Policy Period<br>June 19, 2020 to June 19, 2021 | Effective Date of Endorsement<br>June 19, 2020 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### PUBLIC ENTITY RETAINED LIMITS POLICY
### SCHOLASTIC ENTITY RETAINED LIMITS POLICY

With respect to any **Claim** arising out of a **Certified Act of Terrorism,** the **Policy** is amended to add the following:

A. The following definitions are added and apply under this endorsement wherever the term certified acts of terrorism or the phrase any injury or damage appear in bold print:

   1. For the purposes of this endorsement, **Injury** or **Damage** means any injury or damage covered under any Coverage Part or **Policy** to which this endorsement is applicable and includes but is not limited to **Bodily Injury, Property Damage, Personal Injury** and **Advertising Injury, Injury, Damages** or **Claims Expenses** as may be defined in any applicable Coverage Part or **Policy.**

   2. **Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in accordance with the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a **Certified Act of Terrorism** include the following:

      a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and
      b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.
      c. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for **Injury** or **Damage** that is otherwise excluded under this Policy.

B. In the event of any incident of terrorism, coverage does not apply to **Injury** or **Damage** that is otherwise excluded under any Coverage Part or **Policy** to which this endorsement is applicable.

C. If aggregate insured losses attributable to terrorist acts under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and **We** have met our insurer deductible under the Terrorism Risk Insurance Act, **We** shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

## TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

| Named Insured<br>City of East Point, GA | | | Endorsement Number<br>9 |
|---|---|---|---|
| Policy Symbol<br>PEP | Policy Number<br>G71527098 002 | Policy Period<br>June 19, 2020 to June 19, 2021 | Effective Date of Endorsement<br>June 19, 2020 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims.  All other terms and conditions of policy remain unchanged.

Authorized Agent

# SERVICE OF SUIT ENDORSEMENT

| Named Insured City of East Point, GA | | | Endorsement Number 10 |
|---|---|---|---|
| Policy Symbol PEP | Policy Number G71527098 002 | Policy Period June 19, 2020 to June 19, 2021 | Effective Date of Endorsement June 19, 2020 |
| Issued By (Name of Insurance Company) Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Information about service of suits upon the company is given below. Service of process of suits against the company may be made upon the following person, or another person the company may designate:

> Mr. Paul Bech, Esq., Associate General Counsel
> Chubb
> 436 Walnut Street
> Philadelphia, PA 19106-3703

The person named above is authorized and directed to accept service of process on the company's behalf in any action, suit or proceeding instituted against the company. If the insured requests, the company will give the insured a written promise that a general appearance will be entered on the company's behalf if a suit is brought.

If the insured requests, the company will submit to the jurisdiction of any court of competent jurisdiction. The company will accept the final decision of that court or any Appellate Court in the event of an appeal. However, nothing in this endorsement constitutes a waiver of the company's right to: remove an action to a United States District Court, seek a transfer of a case to another court, or to enforce policy provisions governing choice of law or venue selection, as may be permitted by the laws of the United States, or of any state in the United States.

The law of some jurisdictions of the United States of America requires that the Superintendent, Commissioner or Director of Insurance (or their successor in office) be designated as the company's agent for service of process. In these jurisdictions, the company designates the Director of Insurance as the company's true and lawful attorney upon whom service of process on the company's behalf may be made. The company also authorizes the Director of Insurance to mail process received on the company's behalf to the company person named above.

If the insured is a resident of Canada, the insured may also serve suit upon the company by serving the government official designated by the law of the insured's province.

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

Authorized Representative

XS-3U96g (01/16)

# SIGNATURES

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| City of East Point, GA | | | 11 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| PEP | G71527098 002 | June 19, 2020 to June 19, 2021 | June 19, 2020 |
| Issued By (Name of Insurance Company) | | | |
| Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**ILLINOIS UNION INSURANCE COMPANY** (A stock company)
525 W. Monroe Street, Suite 400, Chicago, Illinois 60661

**WESTCHESTER SURPLUS LINES INSURANCE COMPANY** (A stock company)
Royal Centre Two, 11575 Great Oaks Way, Suite 200, Alpharetta, GA 30022

REBECCA L. COLLINS, Secretary

JOHN J. LUPICA, President

_____
Authorized Representative

LD-5S23j (03/14)

HANNAH - 000318



City of East Point, GA
Policyholder

**POLICYHOLDER DISCLOSURE**
**NOTICE OF TERRORISM**
**INSURANCE COVERAGE**

Coverage for acts of terrorism is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended in 2015, the definition of act of terrorism has changed.  As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury---in consultation with the Secretary of Homeland Security, and the Attorney General of the United States---to be an act of terrorism; to be a  violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of  certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.  Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended.  However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events.  Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism is $29,300, and does not include any charges for the portion of losses covered by the United States government under the Act.

TR-45231 (01/15)

HANNAH - 000319

# C H U B B ®

[X] **Illinois Union Insurance Company**
[ ] **INA Surplus Insurance Company**
[ ] **Westchester Surplus Lines Insurance Company**
[ ] _____

Insured:
City of East Point, GA
2777 East Point Street
East Point, Georgia 30344

Attached To Policy No.:  PEP G71527098 002

Effective Date:  June 19, 2020

---

## GEORGIA SURPLUS LINES NOTIFICATION

**THIS CONTRACT IS REGISTERED AND DELIVERED AS A SURPLUS LINE COVERAGE UNDER THE SURPLUS LINE INSURANCE LAW, O.C.G.A. CHAPTER 33-5.**

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS NOTICE IS ATTACHED OTHER THAN AS STATED ABOVE.

HANNAH - 000320



### Chubb Producer Compensation
### Practices & Policies

Chubb believes that policyholders should have access to information about Chubb's practices and policies related to the payment of compensation to brokers and independent agents. You can obtain that information by accessing our website at http://www.chubbproducercompensation.com or by calling the following toll-free telephone number: 1-866-512-2862.

HANNAH - 000321

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

IL P 001 01 04                    © ISO Properties, Inc.,  2004                    Page 1 of 1

HANNAH - 000322

# POLICY CHANGES

| | |
|---|---|
| Named Insured<br>City of East Point, GA | Endorsement Number<br>12 |

| Policy Symbol<br>PEP | Policy Number<br>G71527098 002 | Policy Period<br>June 19, 2020 to June 19, 2021 | Effective Date of Endorsement<br>June 19, 2020 |
|---|---|---|---|

| |
|---|
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

POLICY FORM OR COVERAGE PART(S) AFFECTED
**Limited Auto Physical Damage Coverage Part**
**PE-20694 (08/06)**

THE FOLLOWING ITEM(S)

☐ Insured Name                          ☐ TRIA
☐ Insured Mailing address              ☐ Endorsement Number(s)
☐ Policy Number                        ☐ Insurance Company Name
☐ Effective Date                       ☐ Producer Name
☐ Expiration Date                      ☐ Producer Address
☐ Limits                               ☒ Coverage Part
☐ Retained Limit

IS (ARE) CHANGED AS FOLLOWS:

In consideration of no change in premium, it is agreed the following form is amended per the attached:
Limited Auto Physical Damage Coverage Part
PE-20694 (08/06)

PREMIUM CHARGED
**N/A**

All other terms and conditions of this **Policy** remain unchanged.

_____
Authorized Representative

HANNAH - 000323



**Chubb Advantage**<sup>SM</sup>
**Public Entity**
**Scholastic Entity**
**Retained Limits Policy**

**LIMITED AUTOMOBILE PHYSICAL DAMAGE COVERAGE PART**

**Schedule**

| Retained Limit: | $50,000 |
|---|---|
| Each Accident Limit: | $2,000,000 |
| Physical Damage Aggregate: | $2,000,000 |

Covered Autos:

| No. | Description |
|---|---|
| | See Fleet by Department Schedule |
| | |
| | |
| | |

In consideration of the payment of the premium, in reliance upon the **Application**, and subject to the Declarations and the terms and conditions of this **Policy**, the **Insured** and the **Insurer** agree as follows:

A.  Insuring Agreements

   The **Insurer** will indemnify the **Insured** for **Loss** in excess of the **Retained Limit** to a **Covered Auto** or its equipment that occurs while the **Covered Auto** is in **Operation**.

   No other obligation to pay any additional sums or provide services is covered.

B.  Retained Limit

   The **Insurer's** liability under this **Policy** applies only to **Loss** which is in excess of the **Retained Limit** applicable to this Coverage Part and specified in the Schedule above.  The **Retained Limit** must be borne by the **Insured** as an uninsured amount and at its own risk.

C.  Limits of Insurance

   1.  Subject to subsection 2 and 3 below, the **Insurer's** maximum liability for all **Loss** under this Coverage Part will not exceed the Physical Damage Aggregate specified in the Schedule above.  This will be true regardless of:
       a.  The number of persons and organizations who are **Insureds** under this **Policy**;
       b.  The number of persons or organizations making **Claims**;
       c.  The number of **Covered Autos** involved in an **Accident**; or
       d.  Premiums paid.

   2.  Subject to subsection 3 below, the Each Accident Limit is the most **We** will pay for the sum of all **Loss** for all **Covered Autos** involved in an **Accident**.

   3.  The most **We** will pay for **Loss** to any one **Covered Auto** is the lesser of:
       a.  The actual cash value of the damaged or stolen property as of the time of the **Loss**; or
       b.  The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality;

©Chubb. 2016. All rights reserved.

HANNAH - 000324

4.  An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total **Loss**.

5.  If a repair or replacement results in better than like kind or quality, **We** will not pay for the amount of the betterment.

D.  Exclusions

The following exclusions apply to this Coverage Part in addition to the exclusions found in the Common Conditions, Definitions and Exclusions section of this **Policy**.

The insurance under this Coverage Part does not apply to:

1.  **Loss** to a **Covered Auto** or its equipment if such **Covered Auto** is not in **Operation** at the time the **Loss** occurs.

2.  Any **Bodily Injury**, **Personal Injury** or **Advertising Injury**.

3.  Any **Property Damage** for which coverage is provided under any other Coverage Part of this **Policy**.

4.  **Loss** to any of the following:

    a.  Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

    b.  Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.

    c.  Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

    d.  Any accessories used with the electronic equipment described in Paragraph 4.c. above.

        Exclusions 4.c. and 4.d. do not apply to:

        i.  Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment (1) is permanently installed in the **Covered Auto** at the time of the **Loss** or (2) is removable from a housing unit which is permanently installed in the **Covered Auto** at the time of the **Loss**, and (3) is designed to be solely operated by use of the power from the **Covered Auto's** electrical system, in or upon the **Covered Auto**; or

        ii.  Any other electronic equipment that is:

            1.  Necessary for the normal operation of the **Covered Auto** or the monitoring of the **Covered Auto's** operating system; or

            2.  An integral part of the same unit housing any sound reproducing equipment described in Paragraph a. above and permanently installed in the opening of the dash or console of the **Covered Auto** normally used by the manufacturer for installation of a radio.

5.  **Loss** caused by or resulting from any of the following  unless caused by other **Loss** that is covered by this insurance:

    1.  Wear and tear, freezing, mechanical or electrical breakdown.

    2.  Blowouts, punctures or other road damage to tires.

©Chubb. 2016. All rights reserved.

HANNAH - 000325

6. **Loss** to any **Covered Auto** while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity.  **We** will also not pay for **Loss** to any **Covered Auto** while that **Covered Auto** is being prepared for such a contest or activity.

7. **Loss** to any **Covered Auto** due to **Diminution in Value**.


E.   Conditions

The following Conditions apply to this Coverage Part in addition to the conditions in the Common Conditions, Definitions and Exclusions section of this **Policy**:

1. If **You** and **We** disagree on the amount of the **Loss**, either may demand an appraisal of the **Loss**.  In this event, each party will select a competent appraiser.  The two appraisers will select a competent and impartial umpire.  The appraiser will state separately the actual cash value and amount of **Loss**.  If they fail to agree they will submit their differences to the umpire.  A decision agreed to by any two will be binding.  Each party will:

    i.   Pay its chosen appraiser; and
    ii.  Bear the other expenses of the appraisal and umpire equally.

    If **We** submit to an appraisal, **We** still retain our right to deny the **Claim**.

2. Condition 8, Duties in the Event of Accident, Occurrence, Wrongful Act or Claim of Common Conditions, Definitions and Exclusions applies to **Loss**.

3. **We** have no duty to provide coverage under this Coverage Part unless there has been full compliance with the following duties and the Common Conditions as modified:
    a.  In the event of **Loss**, **You** must give **Us** prompt notice of the **Loss**.  Include:
        i.   How, when and where the **Loss** occurred;
        ii.  To the extent possible, the names and addresses of any injured persons and witnesses.
    b.  Additionally, **You** must:
        i.   Assume no obligation, make no payment or incur no expense without our consent, except at **Your** own cost.
        ii.  Cooperate with **Us** in the investigation or settlement of the **Claim** or defense against the **Suit**.
        iii. Promptly notify the police if the **Covered Auto** or any of its equipment is stolen.
        iv.  Take all reasonable steps to protect the **Covered Auto** from further damage.  Also keep a record of **Your** expenses for consideration in the settlement of the **Claim**.
        v.   Permit **Us** to inspect the **Covered Auto** and records proving the **Loss** before its repair or disposition.
        vi.  Agree to examination under oath at **Our** request and give **Us** a signed statement of **Your** answers.

4. No one may bring a legal action against us under this Coverage Part until there has been full compliance with all the terms of this Coverage Part.

5. At **Our** option **We** may:
    a.  Pay for, repair or replace damaged or stolen property;
    b.  Return the stolen property, at **Our** expense.  **We** will pay for any **Damage** that results to the **Covered Auto** from the theft; or
    c.  Take all or any part of the damaged or stolen property at an agreed or appraised value.

    If **We** pay for the **Loss**, **Our** payment will include the applicable sales tax for the damaged or stolen property.

6. **We** will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Part.


     ©Chubb. 2016. All rights reserved.

HANNAH - 000326

F.   Definitions

The following definitions apply in addition to the definitions found in the Common Conditions, Definitions and Exclusions section of this **Policy**.

1.   **Covered Auto** means an **Automobile** listed in the Schedule.

2.   **Loss** means direct and accidental loss or damage.

3.   **Diminution in Value** means the actual or perceived loss in market value or resale value which results from a direct and accidental **Loss**.

4.   **Operation** means (a) use or service in the course of an activity away from any building, car port, structure, space or lot where the **Covered Auto** is normally garaged, housed or stored, either permanently or temporarily while not in service or use, or (b) entering or exiting such building, car port, structure, space or lot.   **Operation** does not include being garaged, housed or in storage of any kind anywhere during weekends, holidays, vacations or similar extended periods of inactivity.

HANNAH - 000327

E-FILED IN OFFICE - CB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-03772-S2**
**6/2/2023 12:02 PM**
**TIANA P. GARNER, CLERK**

# IN THE STATE COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

**Donna Ausborn**

_____

_____

_____

PLAINTIFF

CIVIL ACTION
NUMBER:_____

23-C-03772-S2

VS.

**Illinois Union Insurance Company**

_____

**d/b/a Chubb**

_____

DEFENDANT

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

    You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Craig T. Jones
Post Office Box 129
Washington, Georgia 30673
craigthomasjones@outlook.com

**an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.**

**This** _____ **day of** ____2nd day of June, 2023_____, **20_____.**

**Tiana P. Garner**
**Clerk of State Court**

By_____

**Deputy Clerk**

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

SC-1 Rev. 2011

E-FILED IN OFFICE - CB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

23-C-03772-S2
6/2/2023 12:02 PM
TIANA P. GARNER, CLERK

## General Civil and Domestic Relations Case Filing Information Form

☐ Superior or ☒ State Court of **Gwinnett State Court** County

**For Clerk Use Only**

Date Filed _____          Case Number **23-C-03772-S2** _____

**MM-DD-YYYY**

| Plaintiff(s) | Defendant(s) |
|---|---|
| AUSBORN, DONNA | ILLINOIS UNION INSURANCE COMPANY D/B/A CHUBB |

| Last | First | Middle I. | Suffix | Prefix | | Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|---|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix | | Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|---|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix | | Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|---|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix | | Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|---|---|---|---|---|---|

**Plaintiff's Attorney** Craig Thomas Jones          **State Bar Number** 399476          **Self-Represented** ☐

**Check one case type and one sub-type in the same box (if a sub-type applies):**

**General Civil Cases**

- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contempt/Modification/Other Post-Judgment
- ☐ Contract
- ☐ Garnishment
- ☐ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☒ Other General Civil

**Domestic Relations Cases**

- ☐ Adoption
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Dissolution/Divorce/Separate Maintenance/Alimony
- ☐ Family Violence Petition
- ☐ Modification
  - ☐ Custody/Parenting Time/Visitation
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

☐ Check if the action is related to another action pending or previously pending in this court involving some or all of the same: parties, subject matter, or factual issues. If so, provide a case number for each.

_____          _____
**Case Number**          **Case Number**

☒ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in OCGA § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____ **Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

Version 1.1.20