IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA AUSBORN,<br><br>          Plaintiff,<br><br>v.<br><br>ILLINOIS UNION INSURANCE COMPANY D/B/A CHUBB,<br><br>          Defendant. | CIVIL ACTION FILE NO.<br>1:23-cv-02925-JPB |

**DEFENDANT ILLINOIS UNION INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

COMES NOW Defendant Illinois Union Insurance Company ("Illinois Union"), improperly named "Illinois Union Insurance Company d/b/a Chubb," and, pursuant to Fed. R. Civ. P. 12(b)(6), hereby submits this Memorandum of Law in support of its Motion to Dismiss all claims asserted by Plaintiff Donna Ausborn ("Plaintiff" or "Ausborn") against Illinois Union. In support of its Motion, Illinois Union states as follows:

### I.    INTRODUCTION

Plaintiff filed the above-captioned action against Illinois Union to collect a default judgment entered against three officers of the City of East Point, Georgia ("East Point") in a separate, underlying lawsuit (the "the Underlying Lawsuit"). In

LEGAL\64555579\1

the Underlying Lawsuit, Plaintiff alleged that the officers negligently failed to prevent Ausborn's father from a fatal drug overdose. East Point did not provide a defense to its officers in the Underlying Lawsuit.

Illinois Union issued an ***indemnity-only*** policy to East Point which explicitly conditions coverage on East Point providing a defense to any lawsuit. Because East Point breached this policy condition by failing to provide a defense to its officers, Illinois Union has no duty to satisfy the judgment and/or indemnify East Point or its officers for the default judgment entered in the underlying lawsuit.

Even if East Point had not breached this policy condition, there is no coverage under the policy because Plaintiff's father's death was not the result of an "accident." Rather, it was the result of his intentional decision to ingest a fatal amount of drugs. Thus, there was no "occurrence" to trigger coverage under the insurance policy.

Furthermore, even if there was an "occurrence," coverage for the underlying lawsuit is precluded by the policy's medical service exclusion and the law enforcement health care services exclusion because the Underlying Lawsuit is based on the officers' alleged failure to provide Plaintiff's father with the medical services necessary to save him from his drug overdose.

Thus, Plaintiff's lawsuit fails to state a claim upon which relief can be granted, and Illinois Union requests that it be dismissed with prejudice.

## II.     FACTUAL BACKGROUND

On October 4, 2022, Ausborn, in her capacity as the surviving daughter and personal representative of the estate of Kenneth Ausborn ("K.A."), filed a complaint in the State Court of Fulton County, Georgia against Officers Madison G. Burrell, Matthew Cruz, and Pamela Braynen (collectively, the "Officers"). She alleges that K.A. died while being detained at the East Point jail as a result of the Officers' negligence (the "Underlying Lawsuit").

More specifically, Plaintiff alleges that, on the evening of October 10, 2020, K.A. was arrested for disorderly conduct after refusing to leave the premises of a business while intoxicated and unresponsive. (Complaint in Underlying Lawsuit, ¶ 11). Plaintiff further alleges that K.A. had Xanax and Fentanyl with him at the time of his arrest, but the Officers did not search him and confiscate these drugs. (*Id.* at ¶¶ 16-17). Plaintiff also alleges that the Officers negligently failed to get an EMT to monitor K.A. before and during his detention. (*Id.* at ¶¶ 18-19). After K.A. was placed in a holding cell, he overdosed on his Xanax and Fentanyl and died several hours later. (*Id.* at ¶¶ 17, 22).

East Point did not defend the Officers against Ausborn's lawsuit and did not answer the Complaint in the Underlying Lawsuit. As a result of East Point's failure

to defend its Officers, a default judgment was entered against the Officers in the amount of $7,000,000. (Plaintiff's Complaint, ¶ 5; Ex. A to Plaintiff's Complaint).

In the instant lawsuit, Plaintiff now seeks to collect the default judgment entered in the Underlying Lawsuit from Illinois Union on the ground that Illinois Union's policy provides coverage for the judgment. (Plaintiff's Complaint, ¶ 5; Ex. B to Plaintiff's Complaint). However, as explained below, the terms of the insurance policy do not provide coverage for the default judgment entered against the Officers.

### III.   ARGUMENT AND CITATION OF AUTHORITY

This Court should dismiss the instant lawsuit against Illinois Union for failure to state a claim upon which relief can be granted because the insurance policy issued by Illinois Union to East Point does not provide coverage.

### A.   Applicable Pleading Standard

Dismissal for failure to state a claim under Rule 12(b)(6) is appropriate if a complaint's factual allegations fail to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). *See also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level"). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. The

4

complaint must state "more than labels and conclusion and a formulaic recitation of the elements of a cause of action will not do." *Davis v. Coca-Cola Bottling Co., Consol.*, 516 F.3d 955 n. 43 (11th Cir. 2008).

In evaluating a motion to dismiss, "courts must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007). As Ausborn references both the Complaint and Illinois Union's policy in its complaint, both of these documents should be considered in evaluating Illinois Union's motion to dismiss.

**B.** **The Policy Provides No Coverage for the Default Judgment Because the Judgment Resulted from East Point's Breach of the Policy Condition to Defend its Officers in the Underlying Lawsuit.**

Illinois Union issued Policy No. PEP G71527098 002 to East Point for the June 19, 2020 to June 19, 2021 policy period (the "Policy"). The Policy does not provide coverage because East Point failed to defend the Officers in the Underlying Lawsuit.

Under Georgia law, the insured has the initial burden of proving that its loss is covered under an insurance policy's terms. *Essex Ins. Co. v. H & H Land Development Corp.*, 525 F. Supp. 2d 1344 (M.D. Ga. 2007), citing *Chix v. Georgia*

*Farm Bureau Ins. Co.*, 150 Ga. App. 453, 258 S.E.2d 208 (1979). Thus, the burden is on Plaintiff to prove that the Policy provides coverage for the Underlying Lawsuit. Even accepting all of the factual allegations in her complaint, Plaintiff fails to satisfy this burden.

Under the "Policy Conditions" section, the Policy provides:

> All Coverage Parts included in this Policy are subject to the following conditions except as otherwise indicated.
> . . .
>
> c. You have the duty to defend any Claim to which this insurance applies and shall be responsible for the Damages and Claim Expenses up to the Retained Limit.

Ex. B to Plaintiff's Complaint, PE-19610i (02/12), p. 2. "You" is defined as "the Named Insured," *id.*, p. 1, the "Named Insured" is defined as "the person or organization first named in Item 1 of the Declarations," *id.*, p. 11, and the organization first named in Item 1 of the Declarations is East Point, *id.*, PE-19611c (07/11), p. 1. Therefore, coverage under the Policy is conditioned on East Point providing a defense.

Here, East Point breached this Policy condition by failing to defend the Officers in the Underlying Lawsuit and subjecting them to a default judgment. Because the default judgment resulted from the insured's breach of a policy condition, Illinois Union has no duty to indemnify East Point or the Officers for the

judgment. *See, e.g., Heil Co. v. Evanston Ins. Co.*, 2009 WL 596001 (E.D. Tenn. Mar. 6, 2009) (holding that an insurer has no duty to indemnify an insured for a default judgment resulting from the insured's failure to provide a defense in accordance with express policy terms).

### C. Even if East Point Did Not Breach the Policy Condition, There Is No Coverage Because There Is No "Occurrence."

Even if East Point did not breach the policy condition (which it did), there is still no coverage because there is no "occurrence" under the Policy. The Policy's Insuring Agreement provides:

> The Insurer will indemnify the Insured for Damages and Claim Expenses in excess of the Retained Limit for which the Insured becomes legally obligated to pay because of a Claim first arising out of an Occurrence happening during the Policy Period in the Coverage Territory for Bodily Injury . . . taking place during the Policy Period.

Ex. B to Plaintiff's Complaint, PE-19609d (07/11), p. 1. With respect to "Bodily Injury," "Occurrence" means "an accidental happening . . . ." *Id.*, PE-19610i (02/12), p. 11.

Under Georgia law, an accident refers to an unexpected happening rather than one that occurs through intention or design. *Hathaway Development Co., Inc. v. American Empire Surplus Lines Ins. Co.*, 301 Ga. App. 65, 686 S.E.2d 855 (2009). An intentional act is not an accident. *Forster v. State Farm Fire & Cas. Co.*, 307 Ga.

App. 89, 704 S.E.2d 204 (2010), overruled on other grounds by *Taylor Morrison Services, Inc. v. HDI-Gerling America Ins. Co.*, 293 Ga. 456, 746 S.E.2d 587 (2013). "Georgia law is clear that accidental causes are unintended acts and are different from unintended injuries resulting from intentional acts." *State Farm Fire & Cas. Co. v. Diner Concepts, Inc.*, 370 Fed. Appx. 56, 58 (11th Cir. 2010) (applying Georgia law).

Here, K.A.'s death was not caused by "an accidental happening," but by his deliberate decision to ingest drugs. Therefore, there has been no "occurrence" to trigger coverage.

**D.   Even if Coverage Was Triggered, it is Precluded by the Medical Service and Law Enforcement Health Care Services Exclusions.**

1. The Medical Service Exclusion

Even if coverage is triggered under the Insuring Agreement (which it is not), it is precluded by the medical service exclusion. The Policy excludes coverage for:

> [a]ny liability arising out of or attributable to . . . [t]he rendering or failure to render: Medical . . . service or treatment . . . ; or Any service or treatment related or conducive to health or of a professional nature . . . ."

Ex. B to Plaintiff's Complaint, PE-19610i (02/12), p. 15.

This broadly-worded exclusion bars coverage for health-related services even if the services do not require medical expertise or training, and this language has

been upheld by courts. *See, e.g., LCS Corrections Services, Inc. v. Lexington Ins. Co.*, 800 F.3d 664, 671 (5th Cir. 2015) (applying medical service exclusion to bar coverage where staff at detention center failed to administer medicine to inmate); *Brockbank v. Travelers Ins. Co.*, 12 A.D.2d 691, 207 N.Y.S.2d 723 (N.Y. App. Div. 1960) (finding that similarly worded exclusion precluded coverage for injuries that a patient sustained due to the insured's alleged failure to properly raise or adjust her bed rails).

Additionally, the exclusion also precludes coverage for liability arising out of the insured's alleged failure to monitor and thereby prevent a third party's suicide, which has also been upheld by courts. *See Guaranty National Insurance Co. v. North River Insurance Co.*, 909 F.2d 133 (5th Cir. 1990) (applying medical service exclusion to bar coverage for claim that insured hospital failed to monitor a patient who committed suicide by jumping out of the hospital's fourth floor window).

The plain terms of the exclusion confirm this conclusion. The exclusion precludes coverage for liability arising out of "[a]ny service or treatment related or conducive to health *or* of a professional nature;" thus, the service or treatment is excluded if it is "related or conducive to health" even if it is not "professional in nature." *See* Ex. B to Plaintiff's Complaint, PE-19610i (02/12), p. 15 (emphasis added). This conclusion is further evidenced by the fact that the Policy contains a

9

separate exclusion for professional services, implying that the medical service exclusion is not limited to professional services.

Here, the Underlying Lawsuit alleges that K.A. died as a result of the Officers' failure to render "medical treatment or services" or "any service or treatment related or conducive to health." *See* Ex. B to Plaintiff's Complaint, PE-19610i (02/12), p. 15. In the Underlying Lawsuit, Ausborn alleged that the Officers should have gotten an EMT to evaluate K.A. before his admission and to continuously monitor K.A. after his admission. (Underlying Complaint, ¶¶ 18-19). Ausborn alleged that this evaluation and monitoring would have detected signs of medical distress and prevented K.A.'s death. (*Id.*, ¶ 20). Ausborn further alleged that a thorough search of K.A. prior to his detention would have detected the drugs that he fatally ingested. (*Id.*, ¶ 17). As the Officers' liability arose out of their alleged failure to provide "service or treatment related or conducive to health," coverage is precluded by the medical service exclusion.

2. The Law Enforcement Health Care Services Exclusion

With respect to "Law Enforcement Activities," the Policy precludes coverage for "any Claims, Damages or Suits directly or indirectly arising out of . . . [t]he providing or failing to provide any form of health care services, . . . ." Ex. B to Plaintiff's Complaint, PE-19610i (02/12), p. 16. The Policy defines "law

enforcement activities" as "any of the official activities or operations of Your police force or any other public safety organization, including their agents or employees, which enforces the law and protects persons or property." *Id.*, p. 11. This encompasses the duties of a jailer. *Isdoll v. Scottsdale Ins. Co.*, 219 Ga. App. 516, 518, 466 S.E.2d 48, 50 (1995).

In the Underlying Lawsuit, Ausborn alleged that K.A.'s death was caused by the Officers' negligent failure to search, evaluate, and monitor him before and during his detention at the East Point jail. (Underlying Complaint, ¶¶ 16-18). Had they done so, Ausborn claimed, they would have detected K.A.'s drugs or his medical condition and they could have prevented him from either initially ingesting the drugs or subsequently dying from them. (*Id.*). Thus, the Officers' liability arose out of their alleged failure to provide health care services to K.A. Because this alleged failure occurred in the context of the Officers' law enforcement activities as jailers, coverage is further precluded by the law enforcement health care services exclusion.

## IV.   CONCLUSION

For the foregoing reasons, Defendant Illinois Union Insurance Company respectfully requests that this Court dismiss Plaintiff Donna Ausborn's complaint for failure to state a claim under which relief can be granted pursuant to Rule

12(b)(6). Illinois Union also requests any such other and further relief as this Court may deem just and appropriate.

Respectfully submitted this 7th day of July, 2023.

/s/ *Alycen A. Moss*
Alycen A. Moss
Georgia Bar No. 002598
Elliot Kerzner
Georgia Bar No. 225221
Cozen O'Connor
The Promenade, Suite 400
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
Telephone: (404) 572-2052
Facsimile: (877) 728-1396
E-mail: amoss@cozen.com
E-mail: ekerzner@cozen.com

*Counsel for Defendant Illinois Union Insurance Company*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA AUSBORN,<br><br>        Plaintiff,<br><br>v.<br><br>ILLINOIS UNION INSURANCE COMPANY D/B/A CHUBB,<br><br>        Defendant. | CIVIL ACTION FILE NO.<br>1:23-cv-02925-JPB |

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2023, I electronically filed the foregoing ***Defendant Illinois Union Insurance Company's Memorandum of Law in Support of Motion to Dismiss*** with the Clerk of Court using the CM/ECF system. A copy of this filing is also being served upon all counsel by placing a true and correct copy in the United States Mail, addressed as follows:

Craig T. Jones
CRAIG T. JONES, P.C.
Post Office Box 129
Washington, Georgia 30673
*Attorney for Plaintiff*

                                            /s/ Alycen A. Moss
                                            Alycen A. Moss
                                            Georgia Bar No. 002598