# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| DONNA AUSBORN, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ILLINOIS UNION INSURANCE ) <br> COMPANY D/B/A CHUBB, ) <br> ) <br> Defendant. ) <br> ) | CIVIL ACTION FILE NO. <br> 1:23-cv-02925-JPB |

## DEFENDANT ILLINOIS UNION INSURANCE COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS

COMES NOW Defendant Illinois Union Insurance Company ("Illinois Union"), improperly named "Illinois Union Insurance Company d/b/a Chubb," and hereby submits this Reply in Support of its Motion to Dismiss all claims asserted by Plaintiff Donna Ausborn ("Plaintiff" or "Ausborn") against Illinois Union ("Reply"). In support of its Reply, Illinois Union states as follows:

The only disputed issue in this lawsuit is whether Illinois Union had a duty to defend and indemnify its insured, City of East Point, Georgia ("East Point"), in the underlying lawsuit filed by Ausborn against three East Point officers ("Underlying Lawsuit"). Illinois Union's duties to East Point are governed by the terms of the insurance contract between Illinois Union and East Point (the "Policy"), which

Ausborn attached to its complaint. On its face, the Policy imposes no duty to defend on Illinois Union, and it conditions Illinois Union's duty to indemnify on East Point providing a defense. Because the disputed issues in this lawsuit can be resolved solely by reference to the complaint and the Policy, no discovery is necessary, and Ausborn's complaint should be dismissed.

**A.     The Policy Does Not Impose a Duty to Defend on Illinois Union, and the Duty to Indemnify is Conditioned on East Point Providing a Defense.**

"It is well-settled under Georgia law that the insurance contract determines whether the insurer has a duty to defend its insured." *Colonial Oil Industries, Inc. v. Underwriters Subscribing to Policy Numbers TO31504670 and TO31504671*, 106 F.3d 960, 963 (11th Cir. 1997); *Great Am. Ins. Co. v. McKemie*, 244 Ga. 84, 259 S.E.2d 39, 40 (1979). If the insurance contract does not expressly obligate an insurer to provide a defense to its insured, no such obligation exists. *See Owners Insurance Company v. Sidener*, 2022 WL 17716905, at *3 n.4 ("Under Georgia law, the insured has the burden to prove that it suffered a loss covered by the policy."); *Rsrv. Life Ins. Co. v. Davis*, 224 Ga. 665, 667, 164 S.E.2d 132, 133 (1968).

When the terms and conditions of an insurance contract are clear and unambiguous, the terms must be given their literal and plain meaning. *Federated Mut. Ins. Co. v. Ownbey Enterprises, Inc.*, 278 Ga. App. 1, 627 S.E.2d 917 (2006);

*Taylor Morrison Services, Inc. v. HDI-Gerling America Ins. Co.*, 293 Ga. 456, 746 S.E.2d 587 (2013).

The Policy at issue here could not be more clear. The first section of the Policy is titled "Policy Conditions." Policy, PE-19610i (02/12), p. 1. This section contains a heading labeled "Defense and Settlement." *Id*., p. 2. The first sentence under this heading states: "a. We have no duty to defend a Claim against an Insured seeking damages." *Id*. This sentence contains no caveats, preconditions, or qualifications. It is a stand-alone sentence which has no possible meaning other than what Illinois Union has stated in its motion to dismiss: Illinois Union has no duty to defend East Point for any claim under the Policy. By its clear and unambiguous terms, the Policy is an indemnity-only Policy. Nowhere in the Policy is there any imposition of a duty to defend on Illinois Union.

To the contrary, the only duty to defend contained in the Policy is on East Point. In the first section of the Policy clearly labeled "Policy Conditions," the Policy states: "You have the duty to defend any Claim to which this insurance applies and shall be responsible for the Damages and Claim Expenses up to the Retained Limit." *Id*. "You" is defined as "the Named Insured," *id*., p. 1, the "Named Insured" is defined as "the person or organization first named in Item 1 of the Declarations," *id*., p. 11, and the organization first named in Item 1 of the Declarations is East Point,

*id.*, PE-19611c (07/11), p. 1. Therefore, coverage under the Policy is conditioned on East Point providing a defense.

In its Response, Ausborn argues that this sentence is "ambiguous" because the last phrase "up to the Retained Limit" might be qualifying the first phrase "You have the duty to defend." However, this argument is both facially and contextually erroneous. It is facially erroneous because the word "and" separates the two clauses of the sentence: "You have the duty to defend any Claim to which this insurance applies" describes the first of East Point's duties, "and shall be responsible for the Damages and Claim Expenses up to the Retained Limit" describes the second. The word "and" introduces a second duty, and only that duty is qualified by the phrase "up to the Retained Limit." The first duty (East Point's duty to defend) has no such qualification.

The different subjects of these two phrases make this distinction even more obvious. East Point's "duty to defend" refers to "any Claim to which this insurance applies," not to any quantifiable amounts. In contrast, East Point's responsibility "for the Damages and Claim Expenses" refers to a quantifiable amount, and this amount is only "up to the Retained Limit."

Reading this condition in the context of the two preceding conditions eliminates any room for doubt as to its meaning. The first two conditions are limits

4

on Illinois Union's duties to East Point. The first condition states: "We have no duty to defend a Claim against an Insured seeking Damages." *Id*. The second condition states: "We shall have no obligation to pay or indemnify an Insured for any amount if an Insured's obligation to pay Damages and Claim Expenses is within or equal to the Retained Limit." *Id*. Taking these two conditions together, Illinois Union has no duty to defend any claim regardless of the limit, and it has no duty to indemnify damages and claim expenses within or equal to the retained limit.

The third condition imposes a duty on East Point, which is the exact converse of the first two conditions limiting Illinois Union's duties: "You have the duty to defend any Claim to which this insurance applies and shall be responsible for the Damages and Claim Expenses up to the Retained Limit." The language of this third condition parallels the language of the first two conditions. The first two conditions are that (1) Illinois Union has no duty to defend any claim and (2) Illinois Union has no duty to indemnify amounts within or equal to the Retained Limit, and the third condition is that East Point has a duty in the two situations where Illinois Union does not – namely, the duty to defend any claim, and the duty to indemnify up to the Retained Limit.

The language and context of these conditions make clear that East Point has a duty to defend any claims against it, and East Point has a duty to pay Damages and

Claim Expenses up to the Retained Limit. Conversely, Illinois Union has a duty to indemnify East Point for Damages and Claim Expenses that exceed the Retained Limit assuming that East Point fulfills its duties as outlined in the Policy Conditions.

These duties are clearly labeled on the first page of the Policy as "Policy Conditions." *Id.*, p. 1. A policy condition is something that must be performed in order for there to be coverage under the policy, and without which no coverage is triggered. *See Wolverine Ins. Co. v. Sorrough*, 122 Ga. App. 556, 177 S.E.2d 819 (1970) ("A condition precedent is one which must be performed before any right to be created thereby accrues. It requires performance by one party before performance by the other."); *Plantation Pipe Line Co. v. Stonewall Ins. Co.*, 335 Ga. App. 302, 780 S.E.2d 501 (2015) ("The ordinary principle of contract law, that a party seeking to recover under a contract must perform any applicable condition precedent before the contract becomes absolute and obligatory upon the other party, applies to contracts of insurance. Therefore, a forfeiture of insurance coverage may result when an insured fails to satisfy a condition precedent to coverage under the contract."). When an insured's right to recover on a policy hinges on performing a condition, and the insured fails to perform the condition, the insured forfeits coverage. *See Plantation Pipe Line Co.*, 335 Ga. App. at 310.

The insurance contract between Illinois Union and East Point conditions coverage on East Point providing a defense in the Underlying Lawsuit. East Point breached this condition by failing to defend its officers in the Underlying Lawsuit and subjecting them to a default judgment. Because the default judgment resulted from the insured's breach of a policy condition, Illinois Union has no duty to indemnify East Point or its officers for the judgment. *See, e.g., Heil Co. v. Evanston Ins. Co.*, 2009 WL 596001 (E.D. Tenn. Mar. 6, 2009) (holding that an insurer has no duty to indemnify an insured for a default judgment resulting from the insured's failure to provide a defense in accordance with express policy terms).

None of the policy provisions referenced in Ausborn's Response changes this conclusion. The fact that the Policy provides a "right" to Illinois Union to "associate with [East Point] in the defense of any Claim that in [Illinois Union's] sole opinion may create indemnification obligations for [Illinois Union]" does not impose any duty on Illinois Union to defend a lawsuit against East Point or its officers. "Right" does not mean "duty." Ausborn tries to read into the Policy some "implicit" duty to exercise this right, but "right" does not imply "duty," and no speculative "implicit" duty can supersede the Policy's explicit denial of any such duty.

In response to Illinois Union's position that coverage is conditioned on East Point providing a defense, Ausborn states that "there is no such express condition

7

anywhere in the policy." Yet, the Policy – which Ausborn attached to her complaint – expressly states, under the title "Policy Conditions," that "[y]ou have the duty to defend any Claim to which this insurance applies." Policy, PE-19610i (02/12), p. 2. Ausborn contends that "the insurer as drafter of the policy surely could have included" this condition "had that truly been its intent" – and indeed it did. "Policy Conditions" is a clear expression of a condition, and "[y]ou have the duty to defend any Claim to which this insurance applies" is a clear expression of a duty on East Point to defend any claim to which the insurance applies.

In her Response, Ausborn also tries to derive a duty to defend from the fact that the Policy obligates East Point to notify Illinois Union of any claim that may reach 25% of the self-insured retention even when the claim can be entirely resolved within the self-insured retention amount. This is quite the leap. An insured's duty to notify its insurer of a claim that could eventually result in an indemnity obligation does not create a duty on the insurer to defend a lawsuit against the insured. By Ausborn's logic, this provision should also impose a duty on Illinois Union to indemnify East Point as soon as a claim reaches 25% of the self-insured retention. If the reason this conclusion is wrong is because it contradicts the Policy's explicit requirement that East Point meet 100% of the self-insured retention before any coverage attaches, then Ausborn's conclusion is wrong for the same reason: it

contradicts the Policy's explicit requirement that East Point provide a defense before any coverage attaches.

Ausborn makes some additional arguments that are difficult to make sense of, let alone respond to. For example, Ausborn references a "standard of care" that "likely" requires an insurer to defend its insured "if the insureds are joined and they elect to file a crossclaim against Illinois Union for negligence or bad faith." This "standard of care" is devoid of any source, and East Point has neither joined Illinois Union to its lawsuit nor filed a crossclaim against Illinois Union for negligence or bad faith.

Despite stating repeatedly that the Policy has no "policy condition" requiring East Point to defend any claims, Ausborn cites the "Policy Conditions" language and focuses on the preface, which states: "All Coverage Parts included in this Policy are subject to the following conditions except as otherwise provided." Policy, PE-19610i (02/12), p. 1. Ausborn then claims that multiple policy provisions provide "otherwise" by indicating an intent to impose a duty to defend on Illinois Union. But none of them do.

The policy provisions cited by Ausborn in support of her claim that the Policy imposes a duty to defend on Illinois Union actually say nothing about a duty to defend. First, Ausborn cites only the second half of a sentence, which reads in full:

9

"We shall have the right and You shall avail Us of the opportunity to associate with You in the defense of any Claim that in Our sole opinion may create indemnification obligations for Us." Policy, PE-19610i (02/12), p. 2. Apparently, Ausborn confuses the word "right" with the word "duty." A "right" to "associate with [East Point] in the defense of any Claim" does not entail a duty to defend East Point against any claim.

Second, Ausborn points to a policy provision which states: "You must see to it that . . . We receive Your full cooperation in the investigation, settlement or defense of any Claim." *Id*., p. 3. However, as shown above, the Policy provides a "right" to Illinois Union to "associate with" East Point in the defense of a claim if it so chooses. The reference to a "defense" in this provision does nothing to raise such a "right" to the level of a duty. The third provision cited by Ausborn makes no mention at all of any defense.

The fourth provision cited by Ausborn is the Policy's definition of "Claim Expenses," which states: "Claim Expenses means: a. Reasonable and necessary attorneys' fees, expert witness fees and other fees and costs incurred by Us, or by an Insured with Our prior written consent, in the investigation and defense of covered Claims; . . . ." *Id*., p. 8. Once again, the fact that the Policy contemplates Illinois Union's exercise of its "right" to "associate with" Illinois Union in a defense if it so

LEGAL\64930179\1

chooses does not create a duty to defend. In a footnote, Ausborn notes that this language contemplates that Illinois Union will pay defense costs within the self-insured retention. This further demonstrates that it is not intended to create a duty to defend, as even Ausborn does not contend that the Policy imposes on Illinois Union a duty to defend East Point within the self-insured retention.

Similarly, the fifth provision cited by Ausborn requires East Point to "[c]ooperate with Us in the investigation or settlement of the Claim or defense against the Suit." *Id.*, PE-20694 (08/06), p. 3. Again, the fact that, in certain circumstances, Illinois Union may exercise its "right" to "associate with" East Point in the defense against a suit does not create a duty to defend any claim.

No one disputes the language of the Policy, no one disputes that East Point failed to defend its officers in the Underlying Lawsuit, and no one disputes that a default judgment was entered against the East Point officers due to the lack of defense. All of these facts are in Ausborn's complaint and exhibits. Therefore, no discovery is necessary to resolve any of the issues in this lawsuit. On its face, the complaint fails to state a plausible claim for relief against Illinois Union and should therefore be dismissed. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### B. Even if No Condition Was Breached, There Was No "Occurrence."

Even if East Point did not breach a policy condition (which it did), there is no coverage because there is no "occurrence." In her Response, Ausborn argues that her father's death did not result from suicide but from an accidental overdose. However, Mr. Ausborn's ingestion of drugs was still intentional, and, under Georgia law, an intentional act is not an "accident." *Forster v. State Farm Fire & Cas. Co.*, 307 Ga. App. 89, 704 S.E.2d 204 (2010), overruled on other grounds by *Taylor Morrison Services, Inc. v. HDI-Gerling America Ins. Co.*, 293 Ga. 456, 746 S.E.2d 587 (2013); *State Farm Fire & Cas. Co. v. Diner Concepts, Inc.*, 370 Fed. Appx. 56, 58 (11th Cir. 2010) (applying Georgia law) ("Georgia law is clear that accidental causes are unintended acts and are different from unintended injuries resulting from intentional acts."). Because Mr. Ausborn's death resulted from his intentional act of ingesting the drugs, no coverage is triggered by an "occurrence."

### C. Coverage is Also Precluded by the Medical Service Exclusion.

Ausborn attempts to evade the application of the medical service exclusion by arguing that the East Point officers' liability does not arise out of their failure to render medical services, but out of their failure to summon an EMT to render medical services. But Ausborn ignores the key additional language in this exclusion: " . . . or Any service or treatment related or conducive to health . . ." Policy, PE-19610i

12

(02/12), p. 1. The addition of this phrase to the exclusion broadens the scope of the exclusion beyond the failure to render direct medical services to include the failure to provide any service related or conducive to health. *See, e.g., LCS Corrections Services, Inc. v. Lexington Ins. Co.*, 800 F.3d 664, 671 (5th Cir. 2015) (applying medical service exclusion to bar coverage where staff at detention center failed to administer medicine to inmate); *Brockbank v. Travelers Ins. Co.*, 12 A.D.2d 691, 207 N.Y.S.2d 723 (N.Y. App. Div. 1960) (finding that similarly worded exclusion precluded coverage for injuries that a patient sustained due to the insured's alleged failure to properly raise or adjust her bed rails); *Guaranty National Insurance Co. v. North River Insurance Co.*, 909 F.2d 133 (5th Cir. 1990) (applying medical service exclusion to bar coverage for claim that insured hospital failed to monitor a patient who committed suicide by jumping out of the hospital's fourth floor window). Accordingly, the medical service exclusion precludes coverage for the East Point officers' liability.

Ausborn argues that the exclusion contains an exception for the "actual or alleged denial of access to health care services." However, the medical service exclusion contains no such exception. This exception only applies to the law enforcement activities exclusion. The fact that the medical service exclusion omits this exception proves that it applies even to "actual or alleged denial of access to

health care services," which, according to Ausborn, "is exactly what was alleged here." Thus, the medical service exclusion independently bars coverage for the Underlying Lawsuit.

**D.** **Conclusion**

For the foregoing reasons, Defendant Illinois Union Insurance Company respectfully requests that this Court dismiss Plaintiff Donna Ausborn's complaint for failure to state a claim under which relief can be granted pursuant to Rule 12(b)(6). Illinois Union also requests any such other and further relief as this Court may deem just and appropriate.

Respectfully submitted this 24th day of July, 2023.

/s/ *Alycen A. Moss*
Alycen A. Moss
Georgia Bar No. 002598
Elliot Kerzner
Georgia Bar No. 225221
Cozen O'Connor
The Promenade, Suite 400
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
Telephone:  (404) 572-2052
Facsimile:   (877) 728-1396
E-mail:   amoss@cozen.com
E-mail:   ekerzner@cozen.com

*Counsel for Defendant Illinois Union Insurance Company*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

|  |  |
|---|---|
| DONNA AUSBORN,<br><br>        Plaintiff,<br><br>v.<br><br>ILLINOIS UNION INSURANCE COMPANY D/B/A CHUBB,<br><br>        Defendant. | CIVIL ACTION FILE NO.<br>1:23-cv-02925-JPB |

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2023, I electronically filed the foregoing ***Defendant Illinois Union Insurance Company's Reply in Support of Motion to Dismiss*** with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

Craig T. Jones
CRAIG T. JONES, P.C.
Post Office Box 129
Washington, Georgia 30673
*Attorney for Plaintiff*

                                      */s/ Alycen A. Moss*
                                      Alycen A. Moss
                                      Georgia Bar No. 002598